[No. 33491-3-I. Division One. September 5, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. OLEG BINKIN, *Appellant*.

*Douglas J. Ende* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

AGID, J. — Oleg Binkin appeals his conviction for one count of felony harassment arising from an incident during which he telephoned his estranged wife, Zinaida (Zena), and threatened to kill her.[1] Binkin contends the trial court erred in admitting evidence under ER 404(b) and ER 403 of his prior threat to harm Zena's unborn child. He further contends the prosecutor committed misconduct by remarking that it was easy for Binkin to simply deny the charges against him. We hold that, while

---

[1] The information also alleged that Binkin had a previous conviction for fourth degree assault against Zena. Under the harassment statute, this conviction elevated the charged crime from a gross misdemeanor to a class C felony. RCW 9A.46.020(2). In addition to finding Binkin guilty of felony harassment, the jury returned a guilty verdict on one count of violating a protection order. RCW 26.50.110.

the court erred in failing to determine whether Binkin made the prior threat before admitting testimony about it, the error was harmless because Zena's trial testimony is substantial evidence that he did so. We also conclude that the prior threat was properly admitted to establish an element of the crime, i.e., that Zena reasonably feared that Binkin would carry out the threat. Finally, we reject Binkin's misconduct argument because, read in context, the prosecutor's statement was actually a permissible comment on Binkin's credibility. Accordingly, we affirm the conviction.

## FACTS

Binkin and Zena emigrated from the Soviet Union to the United States in July 1991. In November 1991, the couple separated, and Zena sought custody of their son, Misha. Binkin insisted that Zena's friend, Igor, not be present during Misha's visitations with Zena, but the couple agreed to try and resolve the custody issue through mediation. After three mediation sessions, they were unable to reach an agreement. The final session was held on December 23, 1992. According to Zena, Binkin telephoned her the following morning and proposed to allow Misha to see Igor in exchange for Zena's agreement to pay Binkin's attorney fees. After Zena declined his offer, Binkin began "cursing" her in a "very aggressive" tone. Between about 10 A.M. and 2 P.M., Binkin called Zena four times. During the last phone call, he spoke in an "excited" tone, threatening Zena that he would get what he wanted. In his final threat, Binkin told Zena, " 'Remember I will kill you. If I am unable to kill you physically, I will kill you morally.' " Upon hearing this threat, Zena hung up the telephone.[2] She was extremely distressed and believed Binkin was capable of carrying out the threat because his aggressive behavior was increasing as time went on.

Around 3 or 4 P.M., Misha telephoned Zena from

---

[2]Binkin also threatened to "do something else" to Igor, saying he would "resolve that matter in a manly way."

Binkin's apartment and told her he did not want to see Igor. At trial, Misha testified that Binkin told him to say this. Binkin denied telling Misha what to say. As a result of this telephone conversation with her son, Zena became even more upset. She tried to call Binkin back twice, but he hung up on her. Faina Israel, a close friend of Zena's, testified that on the afternoon of December 24 she received an hysterical phone call from Zena. When she reached Zena's apartment, Faina found Zena in an "incoherent," "almost . . . catatonic" state. Zena was rocking herself and sobbing.

Binkin's threat to kill Zena formed the basis of the State's charge against him for felony harassment. Prior to trial, the State filed a motion in limine seeking admission of prior bad acts evidence under ER 404(b). According to the State's offer of proof, after their mediation session on December 23, Binkin threatened, referring to Zena's unborn child, to "drag that animal out of your body and trample it under my feet."[3] The defense argued that the prior threat had not been proved, that proof of the threat was not necessary to prove the crime and that the testimony would be unduly prejudicial. Based on the State's offer of proof and arguments of counsel, the trial court ruled the evidence admissible, reasoning it was "relevant and probative of the malicious intent to commit the offense and of Ms. Binkin's state of mind."

## Decision

Binkin contends the trial court erred on both procedural and substantive grounds by admitting his prior threat to kill Zena's unborn child. First, he argues that the evidence was inadmissible because the court failed both to determine whether Binkin actually made the threat and

---

[3]The State also offered evidence of Binkin's prior conviction for fourth degree assault which arose out of an incident in which Binkin hit Zena in a parking lot. The parties ultimately entered into a stipulation which allowed the State to introduce the fact of the conviction alone for purposes of proving an element of the crime of felony harassment, i.e., that Binkin had a prior conviction for harrassment of the same victim.

to balance the prejudicial impact of the evidence against its probative value. Next, he argues that, since neither Zena's state of mind nor Binkin's intent was a disputed issue at trial, the evidence was not necessary to prove any element of the crime of harassment. We analyze these arguments in turn.

 Under ER 404(b):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Before admitting ER 404(b) evidence under one of the exceptions, the trial court must first determine that the evidence is logically relevant and necessary to prove an essential element of the crime charged. Next, it must decide whether, under ER 403, the probative value of the evidence outweighs its prejudicial effect. *State v. Barker*, 75 Wn. App. 236, 242, 881 P.2d 1051 (1994). When the prior act could be an offense if charged, the court must be satisfied by a preponderance of the evidence that the act actually occurred. *State v. Benn*, 120 Wn.2d 631, 653, 845 P.2d 289, *cert. denied*, 114 S. Ct. 382 (1993); *State v. Tharp*, 96 Wn.2d 591, 594, 637 P.2d 961 (1981). The decision to admit evidence of the defendant's prior acts will not be reversed absent an abuse of the court's discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

 The first issue we address is whether there is evidence that Binkin actually made the threat. In response to the State's motion in limine to admit evidence of Binkin's prior threat, the defense argued:

Allowing the prior acts is not necessary to prove that a threat to kill would cause someone fear. And I do believe that *especially when it's unproven*. There were witnesses who could supposedly have been there. Reading from the police reports, neither of these witnesses can confirm the threats on 12/23 took place.

(Italics ours.) Despite this objection, the trial court did not hear testimony to determine whether the State could prove by a preponderance of the evidence that Binkin actually made the threat. The State argues that the court did not have to hear testimony to reach that conclusion because *its offer of proof was a sufficient basis on which to conclude that the event actually occurred.* Where the existence of a prior bad act is contested, the trial court should conduct a pretrial hearing so that it can hear the testimony and determine which version is more credible. *State v. Stanton*, 68 Wn. App. 855, 865, 845 P.2d 1365 (1993) ("uncharged act must be proved by a preponderance of evidence before it can be admitted under ER 404(b)");[4] *see Benn*, 120 Wn.2d at 653 ("trial court's *preliminary* finding" that a prior bad act was proved by a preponderance of the evidence will be upheld if supported by substantial evidence (italics ours)). It was therefore error to admit the testimony without first making the required finding.

The State also contends it proved the act occurred by presenting Zena's testimony describing the threat at trial. While this is procedurally incorrect under *Benn* and *Stanton*, we agree with the State that the error is harmless because Zena's trial testimony is substantial evidence to support the finding that Binkin made the prior threat. Had the trial court found Zena's version of the events to be uncredible, it would have reversed its ruling. When there is testimony at trial establishing the validity of the State's proffered version of the event, it would be a useless

---

[4]In *Stanton*, the State sought to admit evidence of the defendant's three prior contract disputes on the basis that they would show he acted with criminal intent when he committed the charged crimes of theft and unlawful issuance of a bank check. The court noted that the record contained scant evidence indicating that Stanton acted with criminal intent on those prior occasions and excluded the evidence on the ground that the trial court failed to find, "much less by a preponderance of evidence," that the defendant's prior business transactions were committed with criminal intent. *Stanton*, 68 Wn. App. at 865.

act to remand for a new trial in which the court would make the same finding after a pretrial hearing.[5]

■ Binkin further argues that the trial court's failure to balance the probative value of the prior bad act evidence against its prejudicial effect precludes appellate review. Although the trial court erred in failing to articulate its balancing process, this error is harmless when the record as a whole is sufficient to permit appellate review. *Stanton*, 68 Wn. App. at 864; *State v. Bowen*, 48 Wn. App. 187, 191, 738 P.2d 316 (1987). Here the court indicated on the record the purposes for which it found the evidence admissible, and that record is sufficient to allow this court to review its admissibility under ER 404(b). *Bowen*, 48 Wn. App. at 191.

The trial court's failure to balance the probative value of the evidence against its prejudicial effect requires this court to engage in the balancing process that the court should have conducted. *Stanton*, 68 Wn. App. at 864; ER 403. The evidence that Binkin threatened to kill Zena's unborn child was certainly offensive, and the jury was likely to conclude that if Binkin made the first threat he was more likely to have made the second one. On the other hand, because the prior threat occurred so closely in time to the charged crime, it was highly probative of whether Zena's fear was objectively reasonable. Further, the second threat was egregious enough on its own to have already put the defendant in a bad light before the jury. Finally, as we discuss below, the evidence was relevant to prove an element of the crime. Its prejudicial effect therefore did not outweigh its probative value.

■ Binkin argues that the State did not need to present the evidence of his prior threat to prove either his mali-

---

[5]In a number of cases, our courts have ruled that the State proved by a preponderance of the evidence that the uncharged prior bad acts actually occurred. *E.g.*, *State v. Bythrow*, 114 Wn.2d 713, 719-20, 790 P.2d 154 (1990); *State v. Toennis*, 52 Wn. App. 176, 187, 758 P.2d 539, *review denied*, 111 Wn.2d 1026 (1988). However, those cases do not indicate whether the testimony establishing the prior acts was presented before or after the trial court ruled on the admissibility of the evidence.

cious intent or Zena's state of mind because neither of these elements of the charged crime of harassment was disputed by the defense. He also argues that evidence of the prior threat was not logically relevant to the charged crime because intent is not an element of harassment.

The State charged Binkin under the section of the harassment statute that reads:

(1) A person is guilty of harassment if:

(a) Without lawful authority, the person knowingly threatens:

. . .

(iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and

(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

RCW 9A.46.020. We must determine whether the threat evidence was relevant and necessary to prove any of these elements of the crime.

The State had to prove that it was reasonable for Zena to fear that Binkin would kill her. The evidence of the prior threat was probative of and necessary to prove the victim's state of mind in order to establish that her fear that he would carry out the threat was reasonable. At trial, Zena testified that she believed Binkin was capable of carrying out the threat because his aggressiveness had been increasing over time. The prior threat to Zena and her unborn baby was evidence of Binkin's growing aggressiveness and anger. The fact finder applies an objective standard to determine whether the victim's fear that the threat will be carried out is reasonable. This requires the jury to "consider the defendant's conduct in context and to sift out idle threats from threats that warrant the mobilization of penal sanctions." *State v. Alvarez*, 74 Wn. App. 250, 261, 872 P.2d 1123, *review granted*, 125 Wn.2d 1001 (1994). Whether Zena's fear that Binkin might carry

out his second threat was reasonable is a critical element of the crime charged. Evidence of the initial threat was highly probative of this element because Zena's perception of what Binkin would do stemmed from his increasingly aggressive behavior. This alone is a sufficient basis on which to admit the evidence of the threat to the unborn child.[6]

Binkin next contends the prosecutor committed misconduct by saying in closing argument that, "it's easy for [the defendant]" to take the stand and deny the charges against him because, he argues, the comment improperly shifted the burden to Binkin to prove his innocence. The prosecutor said:

> Now, be aware that the defendant, he doesn't have the burden of proof here. He doesn't have the burden of doing anything. The State has the burden. *Yet it's easy for him to get up here and to just flatly say, "No, no, no."* Was it easy for Zena to get up here and tell you what happened on December 24th? I think you can see for yourself that it was not.

(Italics ours.) When read in context, this comment is really a comment on Binkin's credibility rather than a burden-shifting remark. The prosecutor essentially compared Binkin's flat denial to Zena's detailed testimony, implying that Zena would not put herself through the ordeal of testifying in court if her story were not true.

■ ■ A defendant alleging prosecutorial misconduct bears the burden of demonstrating both that the remarks were improper and that they prejudiced the defense. If the error could have been obviated by a curative instruction and the defendant failed to request one, reversal is not required. *State v. Hoffman*, 116 Wn.2d 51, 93, 804 P.2d 577 (1991). Where, as here, the defendant did not request a curative instruction, the error is considered waived un-

---

[6]The trial court also admitted the evidence as logically relevant to and necessary to prove the element of malicious intent in making the threat. *See Barker*, 75 Wn. App. at 242. We do not reach this issue because we have concluded that the first threat was relevant and necessary to prove another element of the crime.

less the court finds that the remark was "so flagrant and ill intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *Hoffman*, 116 Wn.2d at 93.

In *State v. Robinson*, 44 Wn. App. 611, 624, 722 P.2d 1379, *review denied*, 107 Wn.2d 1009 (1986), the court rejected the defendant's claim that the prosecutor improperly bolstered the child victim's credibility by arguing that young children do not lie about having been sexually abused and suggesting that the victim had no motive to lie. The court ruled that the prosecutor's remarks were simply inferences from the evidence that he hoped the jury would accept, as opposed to the prosecutor's personal opinion about the witness' credibility. *Robinson*, 44 Wn. App. at 624. Similarly, the prosecutor in this case did not express a personal opinion on the relative credibility of the witnesses. Rather, he merely invited the jury to draw an inference from the evidence that, because of the emotional turmoil Zena suffered as a result of Binkin's harassment, it was unlikely that she would put herself through the trauma of testifying in court if the incident did not actually happen. This was not improper argument.

Affirmed.

COLEMAN and WEBSTER, JJ., concur.

Review denied at 128 Wn.2d 1015 (1996).