754

THE STATE OF WASHINGTON, *Respondent*, v. MIGUEL ANGEL
BARRAGAN, *Appellant*.

*Paul J. Wasson II*, for appellant.
*John D. Knodell, Prosecuting Attorney*, and *Stephen P. Scott, Deputy*, for respondent.

SCHULTHEIS, J. — Miguel Barragan was convicted of first degree assault for stabbing a fellow inmate with a pencil.

On appeal he contends the trial court erred in admitting evidence of prior assaults and in giving the jury an instruction defining "deadly weapon." He also argues he had ineffective assistance of counsel. Finding no error, we affirm.

FACTS

In March 1998, Mr. Barragan was residing in a dorm facility at the Grant County jail. Sharing Mr. Barragan's dorm room was Steven Garcia and around eight other inmates. Late one night, after "lights out," Mr. Barragan and Mr. Garcia got into a fight. According to Mr. Garcia, Mr. Barragan swung first and told Mr. Garcia, "You're gonna die." More blows were exchanged and Mr. Barragan then reportedly said, "I'm gonna hit you tonight, don't even try to fall asleep." As Mr. Garcia pushed an intercom alarm button, Mr. Barragan picked up a pencil from the floor and swung it toward Mr. Garcia's left eye. Mr. Garcia blocked the first swing, but only partially blocked a second blow, which struck him in the left temple. The pencil shattered as it hit Mr. Garcia's head, and over one-half inch of it was embedded in his temple. An officer who used forceps to remove the pencil from Mr. Garcia's temple later testified that it was as difficult to remove as a nail. The actual wound, however, was not serious.

Mr. Barragan was charged with one count of attempted first degree murder, one count of first degree assault, and one count of harassment, with alternative counts for second degree assault and third degree assault. All charges included a domestic violence element. At trial, the court amended the counts so that the first, second and third degree assault charges were alternatives to the attempted first degree murder count. The officer who responded to the fight testified that none of Mr. Barragan's and Mr. Garcia's dorm members admitted to seeing or hearing the fracas. After hearing testimony from Mr. Barragan, Mr. Garcia, two officers, and the jail nurse, the jury found Mr. Barragan

guilty of first degree assault and not guilty of the other charges. Finding that Mr. Barragan is a persistent offender, the court sentenced him to life without the possibility of early release. This appeal followed.

## WERE UNPROVED PRIOR ASSAULTS PROPERLY ADMITTED?

In a pretrial hearing, the State moved to admit certain statements made by Mr. Barragan to Mr. Garcia some time before the night of the fight. As support for the harassment charge, the State intended to elicit from Mr. Garcia that Mr. Barragan had bragged about earlier assaults against fellow inmates, instilling fear in Mr. Garcia that Mr. Barragan's threats of violence would be carried out. Over the objection of defense counsel that the validity of these statements must be proved, the court admitted them, finding them relevant to the harassment charge. The court also offered to give the jury a limiting instruction, but defense counsel never requested such an instruction. On appeal, Mr. Barragan contends the statements were improperly admitted under ER 404(b).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person or to show that the person acted in conformity with that character. ER 404(b). Such evidence may be admissible for other purposes, however. ER 404(b). Before admitting evidence of prior acts, the trial court must first determine whether the evidence is logically relevant to a material issue. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995); *State v. Ragin*, 94 Wn. App. 407, 411, 972 P.2d 519 (1999). Second, the court must decide whether the probative value of the evidence outweighs its prejudicial effect. *State v. Binkin*, 79 Wn. App. 284, 289, 902 P.2d 673 (1995). If the prior act could be an offense if charged, the court must be satisfied by a preponderance of the evidence that the act occurred. *State v. Benn*, 120 Wn.2d 631, 653, 845 P.2d 289 (1993). We review the trial court's decision to admit evidence of a defendant's prior acts for abuse of discretion. *Ragin*, 94 Wn. App. at 411.

■ In this case, the trial court found that Mr. Barragan's statements regarding other violent conflicts were relevant to the charge of harassment. A defendant is guilty of harassment if he or she knowingly threatens to cause bodily injury or death to the person threatened. RCW 9A-.46.020(1)(a)(i), (2)(b). The defendant must also place the victim in reasonable fear that the threat will be carried out. RCW 9A.46.020(1)(b). An objective standard is applied to determine whether the victim's fear is reasonable. *Ragin*, 94 Wn. App. at 411. Accordingly, the State had to prove that it was reasonable for Mr. Garcia to believe that Mr. Barragan would carry out his threats to kill or injure Mr. Garcia. *Id.* It was with that aim in mind that the prosecutor sought to admit Mr. Barragan's statements made to Mr. Garcia regarding earlier successful fights with inmates.

■ ■ Mr. Garcia testified that when Mr. Barragan became angry, swung at him, and yelled, "You're gonna die," he was frightened because Mr. Barragan had told him about other fights he had won in other penal institutions. Adding credence to these stories of other battles was the fact that Mr. Garcia had witnessed Mr. Barragan fight with another cellmate earlier that day. Mr. Garcia's knowledge of Mr. Barragan's prior violent acts was relevant to the reasonable fear element of harassment. *See Ragin*, 94 Wn. App. at 411-12 (similar facts, same conclusion). The trial court properly identified on the record this purpose for admitting the evidence and did not abuse its discretion in admitting the evidence on this basis. *State v. Brown*, 132 Wn.2d 529, 571, 940 P.2d 546 (1997).

■■ Although the trial court did not specifically weigh probative versus prejudicial effect, the record is sufficient to permit meaningful review of this second requirement for ER 404(b) evidence admission. *State v. Donald*, 68 Wn. App. 543, 547, 844 P.2d 447 (1993). In light of the testimony describing Mr. Barragan's rage, his repeated threats to kill Mr. Garcia, and his statement that he would "hit" Mr. Garcia as he slept that night, evidence that Mr. Barragan claimed to have successfully fought other inmates was not

overly prejudicial. Further, to paraphrase *Ragin*, the jury was entitled to know what Mr. Garcia knew at the time Mr. Barragan threatened him, to better decide whether a reasonable person with that knowledge would believe that Mr. Barragan would carry out his threats. Under the circumstances, the probative value of the evidence outweighs its prejudicial effect.

■ Finally, Mr. Barragan contends the court erred by failing to determine whether the prior fights actually occurred. The better practice is to hold an evidentiary hearing to determine, by a preponderance of the evidence, whether uncharged crimes occurred. *Binkin*, 79 Wn. App. at 290. But as noted in *Binkin*, a pretrial hearing is necessary only when a prior bad act is contested. Mr. Barragan does not dispute the fact that he had engaged in earlier fights with inmates or that he had spoken of these fights with Mr. Garcia. In fact, he admitted at trial that he had told Mr. Garcia of other fights and had even shown Mr. Garcia an infraction report filed regarding one of the fights. On these facts, an evidentiary hearing for the ER 404(b) statements was not necessary.

## May a Pencil Be a "Deadly Weapon"?

Mr. Barragan next assigns error to the jury instruction defining "deadly weapon" as it relates to the charge of first degree assault. He contends the instruction is unjustified because a pencil could not constitute a deadly weapon.

To support the charge of first degree assault, the State had to prove that, with intent to inflict great bodily harm, Mr. Barragan assaulted Mr. Garcia with a deadly weapon. RCW 9A.36.011(1)(a). "Deadly weapon" is defined in the jury instruction as "any weapon, device, instrument or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily injury." This definition is essentially identical to the statutory definition contained in RCW 9A.04.110(6). "Substantial bodily injury,"

as defined in the jury instruction and by statute, means injury that involves a temporary but substantial disfigurement or that causes a fracture or a temporary but substantial impairment of a body part. RCW 9A.04.110(4)(b).

■ An item may be either a deadly weapon per se, such as a firearm or explosive, or a deadly weapon in fact, due to the manner of its use. *State v. Shilling*, 77 Wn. App. 166, 171, 889 P.2d 948 (1995). A pencil is not a deadly weapon per se. To justify a deadly weapon instruction, the State had to show that the pencil had both the inherent capacity to cause substantial bodily injury or death and that it was readily capable of causing such injury or death under the circumstances of its use. *State v. Skenandore*, 99 Wn. App. 494, 499, 994 P.2d 291 (2000); *see also State v. Hutchinson*, 135 Wn.2d 863, 885, 959 P.2d 1061 (1998) (an instruction must state the applicable law correctly and must be supported by the evidence), *cert. denied*, 525 U.S. 1157 (1999); *Benn*, 120 Wn.2d at 654. The circumstances of a weapon's use include the intent and ability of the user, the degree of force, the part of the body to which it was applied, and the actual injuries that were inflicted. *Shilling*, 77 Wn. App. at 171-72.

■ Here, a reasonable trier of fact could have found that the pencil, as wielded by Mr. Barragan, constituted a deadly weapon. According to Mr. Garcia's testimony, Mr. Barragan swung the pointed end of the pencil—with force—at Mr. Garcia's left eye, and missed Mr. Garcia's eye only because the blow was deflected. Due to the force of the attack and the fact that Mr. Barragan accompanied it with the promise, "You're gonna die," a reasonable person could infer that Mr. Barragan intended to commit great bodily harm or death with the pencil. Expert testimony is unnecessary to prove the obvious fact that a pencil can put out an eye. And the testimony of the officer who pulled out the embedded pencil—describing it as like pulling out a nail with pliers—indicates that while the actual injury was minor, it could have been serious if not deflected from the eye. On the whole, the evidence is substantial that the

pencil constituted a deadly weapon under the circumstances of its use.

## Did Mr. Barragan Receive Effective Assistance of Counsel?

■ ■ Mr. Barragan's final argument is that he received ineffective assistance of counsel. To successfully argue ineffectiveness, he must show that his counsel's performance was deficient and that prejudice resulted from the deficiency. *Donald*, 68 Wn. App. at 550. We strongly presume that counsel's conduct constituted sound trial strategy. *Id*. Mr. Barragan cites four general areas of inadequate representation. In each case, trial counsel exhibited sound, legitimate trial strategy.

■ Failure to propose a limiting instruction. Although the trial court offered to give the jury a limiting instruction regarding the proper use of the ER 404(b) evidence of prior fights, defense counsel never proposed such an instruction. Instead, defense counsel asked Mr. Garcia if fighting was typical in the prison dorms. Mr. Garcia admitted it was. Mr. Barragan does not show that his counsel's failure to propose a limiting instruction was anything but a tactical decision. In fact, as noted in *Donald*, 68 Wn. App. at 551, we can presume counsel decided not to request a limiting instruction because to do so would reemphasize this damaging evidence.

■ Failure to submit a self-defense instruction. Mr. Barragan contends that because he testified at trial that the fight was started by Mr. Garcia, his counsel should have proposed a self-defense instruction. On the contrary, the evidence does not support a self-defense instruction. One cannot deny striking someone and then claim to have struck that person in self-defense. *State v. Aleshire*, 89 Wn.2d 67, 71, 568 P.2d 799 (1977). Mr. Barragan was not entitled to a self-defense instruction because he denied the underlying act that was the basis for all the assault counts. *State v. Gogolin*, 45 Wn. App. 640, 643-44, 727 P.2d 683 (1986).

**Failure to object to aspects of the jury instructions.** As discussed above, Mr. Barragan's argument that the deadly weapon instruction was unjustified is without merit. Consequently, his argument that his trial counsel was deficient in failing to object to this jury instruction is also without merit. He also contends defense counsel should have objected to the court's failure to include the domestic violence element in the instructions. Each of the crimes listed in the amended information included a domestic violence allegation based on RCW 10.99.020, which defines domestic violence in part as crimes by adults against other adults who reside with them. Although unclear from the record, we can only assume that the State intended to leave open the option of seeking an exceptional sentence based on the aggravating factor of domestic violence as defined in RCW 10.99.020.[1] RCW 9.94A.390(2). However, Mr. Barragan does not clarify how it would have served his case to object to the missing domestic violence charges. At any rate, any error was harmless because the court did not consider aggravating factors in imposing Mr. Barragan's sentence.

**Failure to subpoena telephone records or witnesses from the cell.** Mr. Garcia testified at trial that Mr. Barragan attacked him after Mr. Barragan talked to his girl friend on the telephone. Mr. Barragan testified that he had been talking to his father on the telephone and Mr. Garcia started the fight because he wanted to use the telephone. Although Mr. Barragan assigns error to his counsel's failure to subpoena the telephone records, he argues only that the records would have shown who was telling the truth. He does not claim that the records would have proved him right. Most important, Mr. Barragan cannot show that establishing who started the fight would have had any

---

[1] We must comment on the State's decision to charge domestic violence under these circumstances. The intent of the Legislature in adopting chapter 10.99 RCW was to enforce the criminal laws against domestic violence regardless of whether the persons involved are married, cohabiting or involved in a relationship. RCW 10.99.010. We question the wisdom of considering inmates in a penal institution—at least those who are not "involved in a relationship"—as cohabiting adults for the purposes of this act.

impact on the ultimate charge of assault. Accordingly, he does not show that the result of the proceedings would have been different if his counsel had subpoenaed these records. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991).

Mr. Barragan also contends his counsel should have subpoenaed the other inmates in his dorm. Failure to call a witness is rarely grounds to support ineffective assistance of counsel. *State v. Robinson*, 79 Wn. App. 386, 396, 902 P.2d 652 (1995). A prison officer testified at trial that he interviewed all the inmates who shared the dorm with Mr. Barragan and Mr. Garcia, and every man claimed to have slept through the incident. While it is possible that Mr. Barragan's counsel may have been more effective in eliciting information from these witnesses, Mr. Barragan neither makes this claim nor contends that these witnesses would have exonerated him. He fails to demonstrate that trial counsel's performance was unreasonable or that it prejudiced his defense.

Affirmed.

BROWN, A.C.J., and KATO, J., concur.