**FILED**

**APR 18, 2013**

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30653-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RUDY RAY CORDOVA, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Rudy Ray Cordova challenges the sufficiency of the evidence

supporting the jury's determination that he committed felony harassment against a police

officer. Although thin, we conclude there was sufficient evidence and affirm.

FACTS

Mr. Cordova called 911 to report that he had been assaulted by his wife. Spokane

Police Department Officers Holton Widhalm and Chris McMurtrey responded to the

report. The officers split up to interview Mr. and Mrs. Cordova separately. Officer

Widhalm initially interviewed Mr. Cordova; the two officers later switched so that each

officer interviewed each member of the couple. Both officers observed that Mr. Cordova

was intoxicated and slurring his words. He also was bleeding from his lip and had smeared blood on his cheek.

Mrs. Cordova did not want her husband arrested or prosecuted. However, during his interview of Mr. Cordova, Officer McMurtrey determined that Mr. Cordova had been the initial aggressor and would have to be arrested. When the officer communicated that information, Mr. Cordova became agitated and then increasingly angrier. Mr. Cordova accused the officer of racism, but the officer testified that he "just shucked it off." Report of Proceedings (RP) at 251.

Mr. Cordova then began yelling at Officer McMurtrey. As Mr. Cordova became even angrier, Officer McMurtrey called for Officer Widhalm to come into the room. Mr. Cordova was seated on an ottoman while Officer McMurtrey stood near him. Mr. Cordova remained seated while yelling at the officer. He stood up at the request of the officers and was handcuffed without incident after a third officer arrived at the scene.

While walking to the car, Mr. Cordova asked Officer McMurtrey for his name; the officer supplied the information. Mr. Cordova responded, saying, "'That's how people die right there.'" RP at 237. Mr. Cordova then repeated the statement and added, "'That's how people die, by taking the wrong people to jail.'" RP at 237-38. He then said, "'You don't have shit on me. Don't worry, I'll get out of jail tomorrow and find out where you guys live. I've been to prison.'" RP at 238. Officer McMurtrey also testified that Mr. Cordova's tone and demeanor were cold and deliberate and that his whole body

2

was tensed when he made those statements. It was not a joking situation; the officer interpreted the remarks as Mr. Cordova being very angry at him. At the car, Mr. Cordova "bowled his chest out" and took a small step toward the officer. RP at 240.

When asked at trial if he had been concerned about the statements, Officer McMurtrey answered "yes." He also testified that he was "a little big aghast at the direct nature of the threat." RP at 238. The officer noted that in the computer age it was easy to discover where someone lived and that was one reason the incident was "concerning." Officer Widhalm provided similar testimony concerning the statements. He was "very worried" about them. RP at 223.

The prosecutor ultimately filed charges of fourth degree assault for the altercation with Mrs. Cordova and felony harassment for the statements made to Officer McMurtrey. Prior to trial the prosecutor moved in limine to admit testimony that the officers had received information from dispatch concerning Mr. Cordova. Officer McMurtrey told the court that the officers had been advised of his criminal history, alerting them that he was a convicted felon and armed career criminal. The dispatcher also relayed a T3 code, which was a caution notice for the officers. RP at 77. After hearing argument from counsel, the court excluded evidence that Mr. Cordova was a convicted felon and ruled that use of the word "career" might mislead the jury. RP at 157-58. At trial, Officer McMurtrey testified only that dispatch had alerted the officers that Mr. Cordova was an

3

"armed criminal" and a temperament code 3, indicating an officer safety caution. RP at 227-28.

The two officers and Mrs. Cordova were the only witnesses at trial. The defense argued self-defense on the assault charge and that it was not reasonable for the officers to fear the threats Mr. Cordova had made. The jury acquitted on the assault count, but convicted on the harassment charge.

Mr. Cordova timely appealed to this court.

## ANALYSIS

Mr. Cordova challenges the sufficiency of the evidence to support the jury's verdict and the court's decision to admit some evidence of the dispatcher's communication to the officers.

*Sufficiency of the Evidence*

Well-established standards govern review of a sufficiency of the evidence challenge. Such challenges are reviewed to see if there was evidence from which the trier of fact could find each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Green*, 94 Wn.2d at 221-22.

As charged here:

(1) A person is guilty of harassment if:

4

(a)     Without lawful authority, the person knowingly threatens:
(i)     To cause bodily injury immediately or in the future to the
person threatened or to any other person;
.... and
(b)     The person by words or conduct places the person threatened
in reasonable fear that the threat will be carried out.

RCW 9A.46.020.

The issue in this case concerns the sufficiency of the evidence establishing the

elements of subsection (1)(b) of the statute. By its terms, that language requires proof of

both the victim's subjective fear ("places the person threatened in . . . fear") and the

reasonableness of the fear. *State v. Cross*, 156 Wn. App. 568, 582-83, 234 P.3d 288

(2010); *State v. Alvarez*, 74 Wn. App. 250, 260-61, 872 P.2d 1123 (1994), *aff'd*, 128

Wn.2d 1, 904 P.2d 754 (1995); 13A SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON

PRACTICE: CRIMINAL LAW § 1308, at 259 (2d ed. 1998).

Although he did not argue the point below, Mr. Cordova contends here that there

was no evidence that Officer McMurtrey was in subjective fear since he was only

"concerned" about the threat. Mr. Cordova also reprises his trial argument that it was not

reasonable to feel threatened in this circumstance. Since the evidence overlaps, we

address these two elements together.

Mr. Cordova bases his argument on language in *State v. C.G.*, 150 Wn.2d 604, 80

P.3d 594 (2003). That felony harassment case was charged under a theory that the

defendant had threatened to kill the victim, but the victim only testified that he had

"concern" that the defendant "might try to harm him." *Id.* at 607. The court ruled that the statute required proof "that a threat to *kill* will be carried out." *Id.* at 610. It then concluded the evidence was insufficient, stating:

> there is no evidence that [the victim] was placed in reasonable fear that she would kill him.

*Id.*

The State's case in *C.G.* failed because there was no threat to *kill* rather than there being no actual threat. Use of the word "concern" did not itself fail to satisfy the statute; if the *C.G.* court had felt there was no threat at all, as opposed to no death threat, it would not have needed to address the "kill" issue and would simply have reversed the case for lack of evidence of a threat. Thus, the prosecutor's failure here to ask if Officer McMurtrey was in "fear" is not insufficient evidence as a matter of law.

Instead, the question is whether the totality of the evidence established both that the officer had a subjective fear and that it was a reasonable fear. It did. Not only did the officer express his "concern" and that he was "aghast" about Mr. Cordova's statements, he explained why—in the Internet age it is comparatively easy to locate another person. The direct nature of the threat to kill also caught his attention, and the defendant's body language showed that he was angry with the officer. Following the defendant's unsolicited statement that he had been in prison and would soon be released from jail after this arrest, the officer understandably took the remarks as a threat that caused him

6

fear. Indeed, Mr. Cordova has never suggested there was some innocent purpose to his comments. On these facts, the jury was permitted to conclude that the officer feared Mr. Cordova's threats.

Those same facts help establish that the fear was reasonable. Not only was there a threat to kill coming from a self-admitted felon who was angry and aggressive, the officers had received a temperament "caution" from dispatch before meeting Mr. Cordova. That information, in light of subsequent developments, could understandably raise concerns about the seriousness of the threat. A victim's knowledge of the defendant's past behavior is highly probative evidence that bears directly on the reasonableness of the victim's fear. *State v. Barragan*, 102 Wn. App. 754, 9 P.3d 942 (2000); *State v. Ragin*, 94 Wn. App. 407, 411, 972 P.2d 519 (1999) (per curiam); *State v. Binkin*, 79 Wn. App. 284, 291, 902 P.2d 673 (1995). There was sufficient evidence for the jury to conclude the officer's fear was reasonably justified.

The evidence was sufficient to support the jury's determination that Officer McMurtrey was placed in reasonable fear that Mr. Cordova would kill him.

*Officer Caution*

Mr. Cordova also challenges the trial court's decision, allegedly in violation of ER 404(b), to admit evidence that Mr. Cordova was an "armed criminal" whose temperament suggested that the officers proceed with caution. We are not convinced this truly presents

an ER 404(b) issue. The trial court carefully considered the evidence and did not abuse its discretion.

Evidentiary rulings, including those under ER 404(b), are reviewed for abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). Discretion is abused if it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The purpose of ER 404(b) is to prohibit the admission of evidence that suggests that the defendant is a "criminal type" and thus likely guilty of committing the crime with which he is charged. *State v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995). When ER 404(b) evidence is admitted, the trial court is required to state its reasoning on the record. *State v. Jackson*, 102 Wn.2d 689, 693, 689 P.2d 76 (1984). As an evidentiary matter, ER 404(b) does not implicate constitutional concerns. *Id.* at 695.

Mr. Cordova argues, as he did in the trial court, that the dispatch information should have been excluded under ER 404(b) as previous "bad acts" evidence. He specifically contends on appeal that the trial court erred in failing to find there was a factual basis for the police department's assessment of his character and in failing to balance the prejudicial impact of the information against its probative value. We do not agree that this presents an ER 404(b) issue.

Admittedly, this court previously has treated similar evidence as an ER 404(b) problem. In both *Barragan* and *Ragin*, this court assessed trial court rulings admitting

8

evidence of a defendant's own statements to victims detailing prior bad acts under an ER 404(b) analysis.[1] We do not believe that approach is proper in this case. What was at issue here was not the defendant's own prior bad acts, but, instead, law enforcement's assessment of the defendant in light of his prior actions.

Appellant agrees, somewhat begrudgingly, that this is not a true "bad acts" case.[2] Instead, he argues that because the police assessment implies that he has a bad criminal record, it is the functional equivalent of ER 404(b) evidence and should itself be subjected to analysis under that rule. By moving the focus from the evidence used at trial to the basis for that evidence, his argument loses its force. The police assessment is not itself "other crimes, wrongs, or acts" to which ER 404(b) applies.[3] The assessment reflects law enforcement opinion of Mr. Cordova based on his prior conduct, but the assessment itself is not a prior bad act of the defendant. ER 404(b) is not applicable to

---

[1] Both *Barragan* and *Ragin* followed the approach used in *Binkin*, 79 Wn. App. 284. The problem with that approach is that *Binkin* involved a case where the evidence admitted was a prior bad act—a previous assault by the defendant against the victim—in order to establish the reasonableness of her fear of his threat in the current harassment prosecution. Neither *Barragan* nor *Ragin* involved efforts to establish a prior bad act of the defendant; both involved use of the defendant's own statements to the victim.

[2] "Although this evidence is not 'prior bad act' evidence per se, these unattributed statements about Mr. Cordova's reputation with the police department imply prior bad acts have occurred to lead to these statements in his police record." Br. of Appellant at 11 n.1.

[3] Whether the assessment was objectively accurate, something that trial counsel argued needed to be proved, was irrelevant. What was relevant was the effect of the defendant's threat on the officers in light of that assessment.

9

this situation anymore than it would be to the opinion of a witness[4] or impeachment by prior conviction,[5] all of which can have basis in the prior bad acts of the defendant or witness.

Instead, the appropriate rule is ER 403, which permits the trial court to exclude probative evidence when its "value is substantially outweighed by the danger of unfair prejudice." The trial court applied ER 403 in its analysis of this evidence and used it to exclude particularly prejudicial components of the police assessment while leaving the most probative evidence in place. The trial court carefully exercised its authority and did not abuse its discretion in its ruling. The reasonableness of the officer's fear was an element of the State's case and made evidence of why the threat should be taken seriously highly probative. *Barragan*, 102 Wn. App. 754; *Ragin*, 94 Wn. App. 407; *Binkin*, 79 Wn. App. 284. The trial court carefully limited the evidence to its core components (defendant was an armed criminal who should be approached with caution) while limiting the more prejudicial and extraneous elements. The court carefully weighed the situation and did not abuse its discretion in striking its balance. There was no error.

The conviction is affirmed.

---

[4] ER 405; ER 701; ER 702; ER 703.
[5] ER 609.

No. 30653-4-III
State v. Cordova

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, J.

11