

2016 MAY -2

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 73544-6-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ABDIQAHAR ABDIRAHMAN ADAN, | FILED: May 2, 2016 |
| Appellant. | |

LEACH, J. — Abdiqahar Adan appeals his convictions of misdemeanor harassment and unlawful imprisonment. He claims that the trial court abused its discretion when it admitted ER 404(b) evidence that Adan previously sexually assaulted the same victim. Also, Adan contends insufficient evidence supports the misdemeanor harassment charge because the State failed to prove that Adan's threats to kill the victim caused her to fear bodily injury. The trial court properly admitted the evidence of the prior sexual assault to prove an essential element of the crime, the reasonableness of the victim's fear. Viewing the evidence in the light most favorable to the State, as we must, the record includes sufficient evidence for the jury to find that Adan's threat to kill caused the victim to reasonably fear bodily injury.

## Background

### Substantive Facts

Adan and M. began secretly dating in late 2013. M. testified that on October 24, 2015, Adan picked her up at her mother's house in Renton and drove her to the movie theater at Southcenter Mall. They walked to the movie theater but could not decide on a movie. They returned to the car. M. testified that back at the car Adan started "screaming and hollering and calling me names all over again like she [sic] was doing in the spring. How I'm still ugly. I'm still a lot of things." Then "[h]e physically picked me up and just took me out of the car and just dropped me and drove off." She waited there until Adan returned and apologized; then she got back in the car.

M. testified that Adan continued to yell at her as he drove to a restaurant a few blocks away. Then Adan decided that he wanted to have sex, took off all his clothes, and got into the backseat. M. said no. She asked Adan to take her home. Instead, Adan drove them to an IHOP restaurant in Seattle. At some point, Adan took M.'s phone from her. M. left the restaurant while Adan was eating and started walking toward her apartment nearby.

M. had been walking for five to ten minutes when she heard a car behind her. Adan pulled over, got out of the car, grabbed her, and physically put her into the car. As he drove off, he began yelling, calling her names, and banging his head against the car. M. testified that by this time she was scared.

M. testified that Adan started threatening her, saying, "'I'm going to kill you. You know, nobody's going to find you. I'm going to take you to the lake. I'm going to dump your body. Nobody's going to find you,'" and "'If you were in Africa, nobody would care.'" She responded, "Well, thank God I'm in America." Then Adan punched her twice in the mouth, knocking loose two of her teeth. He then grabbed her hair and banged her head against the passenger window. M. testified that she believed Adan was going to kill her.

Adan then drove to Colman Park on Lake Washington. He removed the SIM (subscriber identity module) card[1] and battery from M.'s cell phone. He told M. that he was taking the phone to keep her from calling the police. Adan grabbed her from the car and dragged her toward the lake as he continued to scream at her. He put her down by the lake and began to wash his hands in the water, still yelling at her, as she sat by the lake. She remembered seeing a woman walking a dog but did not recall interacting with her or anything that happened before an ambulance arrived.

Traci Janssen witnessed some of the events at the park. She testified that she was walking her dog when M. walked toward her with a bloody mouth. M. asked if she could use Janssen's phone or if Janssen would call 911 for her. Janssen saw Adan walking behind M. without speaking. Janssen quickly went to

---

[1] "[A] card that is inserted into a device (as a cell phone) and that is used to store data (as phone numbers or contact information)." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/SIM%20card (last visited Apr. 15, 2016).

a different part of the park and called the police. Janssen could still see M. and Adan from where she stood. She saw Adan catch up to M., grab her in a hug, and then start screaming at her while holding her at arm's length. Soon, the police arrived. The jury heard Janssen's 911 call at trial.

Procedural Facts

The State charged Adan with assault in the second degree, felony harassment, and unlawful imprisonment. M. and Adan provided substantially different testimony about the incidents at trial. Adan denied and refuted all but one of M.'s allegations. Adan did not address the alleged sexual assault. The State largely relied on M.'s testimony about the charged incident, as only she and Adan witnessed what occurred.

During a pretrial defense interview and briefly in a statement to a police officer, M. stated that Adan sexually assaulted her a few months before. She never reported the incident to police and could not remember exactly when it took place. M. testified about the incident at trial. In the spring of 2014, she and Adan went to a park and sat in the front seats of her car. When it started getting late, M. told Adan that she wanted to leave. Adan got upset and started screaming at her and banging his head in the car. He said that he was always sacrificing for her and insulted her appearance. M. was scared. M. testified that Adan picked her up and put her in the backseat of the car. He took the car keys and locked all the doors and windows. Then he "forced himself" on her and started having sex with her. She screamed, but nobody heard her. After the

incident, she did not speak to Adan for a month, but she decided to get back together with him because she still loved him.

Before trial, the State asked the court for permission to introduce M.'s testimony about the sexual assault incident. Adan opposed the request, relying on ER 404(b). The trial court admitted the evidence. The court gave a limiting instruction twice—before the testimony was presented and before the jury deliberated. The instruction stated, "Before evidence of allegations of prior acts is allowed, the Court advises you and instructs you that you may consider the testimony only for the purpose of determining the witness's state of mind on October 24th and 25th." Adan also requested and received an instruction that allowed the jury to consider misdemeanor harassment, a lesser included offense of felony harassment.

The jury found Adan not guilty of assault in the second degree and felony harassment but found Adan guilty of misdemeanor harassment and unlawful imprisonment. Adan appeals.

Analysis

ER 404(b) Evidence

Adan contends that the trial court abused its discretion under ER 404(b) when it admitted M.'s testimony that Adan sexually assaulted her several months before the charged incident.

Interpretation of an evidentiary rule presents a question of law, which we review de novo.[2] When the trial court has correctly interpreted the rule, we review the trial court's decision to admit the evidence for an abuse of discretion.[3] A court abuses its discretion when it exercises it on untenable grounds or for untenable reasons.[4] "Failure to adhere to the requirements of an evidentiary rule can be considered an abuse of discretion."[5]

ER 404(b) prohibits admitting "[e]vidence of other crimes, wrongs, or acts" to prove a person's character and show the person acted in conformity with that character.[6] The same evidence may be admissible for other purposes, depending on its relevance and the balancing of its probative value against unfair prejudice.[7]

> To admit evidence of other wrongs, the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.[8]

The trial court must conduct this analysis on the record.[9] In doubtful cases, the trial court should exclude the evidence.[10] If the court admits the evidence, it must

---

[2] State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).
[3] DeVincentis, 150 Wn.2d at 17.
[4] State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).
[5] State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007).
[6] State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012).
[7] Gresham, 173 Wn.2d at 420.
[8] Vy Thang, 145 Wn.2d at 642.
[9] State v. Smith, 106 Wn.2d 772, 776, 725 P.2d 951 (1986) (citing State v. Jackson, 102 Wn.2d 689, 694, 689 P.2d 76 (1984)).
[10] Vy Thang, 145 Wn.2d at 642; Smith, 106 Wn.2d at 776.

also give a limiting instruction to the jury.[11] If the trial court gives a limiting instruction, we presume jurors have followed that instruction, absent evidence proving the contrary.[12] Here, the trial court gave the jury an appropriate limiting instruction.

Adan challenges the trial court's decision on two grounds: (1) that the evidence of the prior sexual assault was not relevant to show M. reasonably feared Adan would carry out his threat to kill her and (2) that the evidence was unfairly prejudicial. Adan contends that the evidence was not relevant because the earlier sexual assault incident did not include any death threats or evidence that Adan used brute force or attempted to kill M. He also maintains that M. did not relate her fear of the charged threat to any consideration of the earlier incident. Thus, no evidence shows that the earlier incident affected her state of mind.

The trial court is generally the proper court to decide the relevance of evidence, and this court reviews its decision for abuse of discretion.[13] Relevant evidence must tend "to make the existence of any fact that is of consequence to

---

[11] Foxhoven, 161 Wn.2d at 175.

[12] State v. Montgomery, 163 Wn.2d 577, 596, 183 P.3d 267 (2008); State v. Kirkman, 159 Wn.2d 918, 928, 155 P.3d 125 (2007); State v. Davenport, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984).

[13] Foxhoven, 161 Wn.2d at 176; State v. Lough, 125 Wn.2d 847, 861, 889 P.2d 487 (1995).

the determination of the action more probable or less probable."[14] Relevant prior misconduct evidence tends to prove an issue the jury must decide.[15]

A person is guilty of misdemeanor harassment if he or she knowingly threatens "to cause bodily injury immediately or in the future to the person threatened or to any other person,"[16] which "places the person threatened in reasonable fear that the threat will be carried out."[17] The charge is elevated to a felony if the threat constituted a threat to kill.[18] Whether the threat created a "reasonable fear" is an essential element of both misdemeanor and felony harassment.[19] The fact finder applies an objective standard to determine if the victim's fear that the threat will be carried out is reasonable.[20] This requires the jury to "'consider the defendant's conduct in context and to sift out idle threats from threats that warrant the mobilization of penal sanctions.'"[21]

Washington courts have allowed evidence of prior misconduct to show that a victim's fear was reasonable. In State v. Johnson,[22] this court held that evidence of the defendant's prior controlling or domineering behavior toward the

---

[14] ER 401; Foxhoven, 161 Wn.2d at 176; Lough, 125 Wn.2d at 861-62.
[15] See State v. Magers, 164 Wn.2d 174, 183, 189 P.3d 126 (2008); State v. Saltarelli, 98 Wn.2d 358, 362, 655 P.2d 697 (1982) ("[T]he evidence must be shown to be logically relevant to a material issue before the jury.").
[16] RCW 9A.46.020(1)(a)(i).
[17] RCW 9A.46.020(1)(b).
[18] RCW 9A.46.020(2)(b)(ii).
[19] State v. Ragin, 94 Wn. App. 407, 411, 972 P.2d 519 (1999).
[20] Ragin, 94 Wn. App. at 411.
[21] Ragin, 94 Wn. App. at 411 (quoting State v. Alvarez, 74 Wn. App. 250, 261, 872 P.2d 1123 (1994), aff'd, 128 Wn.2d 1, 904 P.2d 754 (1995)).
[22] 172 Wn. App. 112, 120-21, 297 P.3d 710 (2012), aff'd in part, rev'd in part, 180 Wn.2d 295, 325 P.3d 135 (2014).

victim was relevant to prove the element of reasonable fear. In State v. Binkin,[23] this court held that the evidence of a prior threat against the same victim was relevant to prove the element of reasonable fear. In State v. Magers,[24] the Washington Supreme Court held that the trial court properly admitted evidence of acts causing defendant's prior arrest for domestic violence against the same victim and evidence of defendant fighting in jail to prove the element of reasonable fear.

Here, the evidence that Adan previously sexually assaulted M. was similarly relevant to prove that she reasonably feared Adan would kill her, an essential element of felony harassment.

Even if relevant, if the evidence's prejudicial effect substantially outweighs its probative value, a trial court cannot admit it.[25] Adan asserts that the trial court did not properly weigh the probative value against the prejudicial effect. He maintains that admitting the uncharged rape evidence simply caused the jurors to have "a strong emotional reaction of animosity toward [him] and believed he had an immoral and a criminal character."

The trial court must balance the probative value of the evidence against its potential prejudicial effect on the record.[26] In this case, the trial court considered both parties' arguments on the record before concluding that the evidence was

---

[23] 79 Wn. App. 284, 292-93, 902 P.2d 673 (1995), abrogated on other grounds by State v. Kilgore, 147 Wn.2d 288, 53 P.3d 974 (2002).
[24] 164 Wn.2d 174, 183, 189 P.3d 126 (2008).
[25] Ragin, 94 Wn. App. at 412.
[26] Foxhoven, 161 Wn.2d at 175.

highly probative of whether M.'s fear was objectively reasonable and that this probative value outweighed its prejudicial effect.

Whether M.'s fear that Adan would carry out his threat was reasonable is a critical element of the crime charged.[27] M. testified that Adan behaved aggressively and erratically during the charged incident, but this behavior alone did not provide a context for M.'s state of mind.[28] Evidence that Adan previously assaulted her was highly probative of this issue, as M.'s experiences with Adan would significantly influence her perception of what Adan would or would not do.[29] Excluding this evidence would have hindered the trier of fact's ability to determine the reasonableness of M.'s fear that Adan would carry out his threat.[30] Although clearly prejudicial, the trial court did not abuse its discretion by deciding that its probative value outweighed its possible prejudicial effect.

Before the jury heard the evidence, the trial court provided the required limiting instruction. We assume the jurors followed those instructions and only used the evidence for the permitted purpose.[31] Thus, the trial court did not abuse its discretion in admitting the evidence of the sexual assault under ER 404(b).

Insufficient Evidence for Misdemeanor Harassment

Adan next contends insufficient evidence supports his conviction for the lesser included offense of misdemeanor harassment. The State contends that

---

[27] Binkin, 79 Wn. App. at 292-93Smith.
[28] Ragin, 94 Wn. App. at 412.
[29] Binkin, 79 Wn. App. at 292-93.
[30] Ragin, 94 Wn. App. at 412.
[31] Ragin, 94 Wn. App. at 413.

the "invited error doctrine" bars this challenge because Adan proposed the jury instructions for misdemeanor harassment as a lesser included offense.

The "invited error doctrine" prevents a party from appealing or gaining a windfall from its own errors.[32] This doctrine would prohibit Adan from challenging the misdemeanor harassment instruction that he proposed at trial. But it does not prevent Adan from challenging the sufficiency of the evidence to support the jury's verdict. Because the "invited error doctrine" does not apply, we consider the merits of Adan's sufficiency challenge.

In considering a sufficiency of the evidence challenge, a reviewing court will reverse a conviction "only where no rational trier of fact could find that all elements of the crime were proved beyond a reasonable doubt."[33] The State may establish the elements of a crime by either direct or circumstantial evidence.[34] This court draws all reasonable inferences from the evidence in favor of the State and interprets it most strongly against the defendant.[35] A claim of insufficient evidence admits the truth of the State's evidence and all reasonable inferences drawn from that evidence.[36] We defer to the trier of fact's

---

[32] State v. Momah, 167 Wn.2d 140, 150-53, 217 P.3d 321 (2009); State v. Henderson, 114 Wn.2d 867, 869-71, 792 P.2d 514 (1990).

[33] State v. Smith, 155 Wn.2d 496, 501, 120 P.3d 559 (2005); State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[34] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

[35] State v. Hosier, 157 Wn.2d 1, 8, 133 P.3d 936 (2006); Salinas, 119 Wn.2d at 201; Smith, 155 Wn.2d at 501.

[36] Salinas, 119 Wn.2d at 201.

decisions about credibility, conflicting testimony, and the persuasiveness of the evidence.[37]

To convict a defendant of misdemeanor harassment the State must prove beyond a reasonable doubt that (1) the defendant knowingly threatened to cause bodily injury immediately or in the future to the victim or any other person and (2) the words or conduct of the defendant placed the victim in reasonable fear that the threat would be carried out.[38]

In State v. C.G.,[39] the Supreme Court overturned the defendant's conviction for felony harassment because the victim testified to fearing only bodily harm, not death. The court held that the State needed to prove that the victim was "placed in reasonable fear that the threat made is the one that will be carried out."[40] But the court noted that when the evidence shows a defendant threatened to kill, the State might also charge the defendant "with threatening to inflict bodily injury, in the nature of a lesser included offense."[41] Thus, a defendant may be convicted on the "misdemeanor charge even if the person threatened was not placed in reasonable fear that the threat to kill would be carried out, but was placed in fear of bodily injury."[42]

---

[37] State v. Hernandez, 85 Wn. App. 672, 675, 935 P.2d 623 (1997); State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992), abrogated on other groudns by In re Pers. Restraint of Cross, 180 Wn.2d 664, 327 P.3d 660 (2014)..
[38] RCW 9A.46.020(1)(a)(i), (b).
[39] 150 Wn.2d 604, 610, 80 P.3d 594 (2003).
[40] C.G., 150 Wn.2d at 610.
[41] C.G., 150 Wn.2d at 611.
[42] C.G., 150 Wn.2d at 611.

Adan relies on C.G. to argue that because M. did not reasonably fear the harm he threatened (death), the State presented insufficient evidence to convict him of misdemeanor harassment. Adan correctly notes that M. never testified that he threatened to inflict bodily injury, only that he threatened to kill her. Thus, the jury did not convict him for "the threat made." But the facts here are opposite those of C.G. In C.G., the victim testified to a lesser fear than the one required to prove the charged crime, and here M. testified to a greater fear than that required for misdemeanor harassment. A threat to kill undoubtedly includes the lesser threat to inflict bodily injury. And fear of the threat to kill would similarly include fear of bodily injury. The Supreme Court anticipated this very circumstance when it said that the State might charge a defendant who threatens to kill "with threatening to inflict bodily injury, in the nature of a lesser included offense." Thus, C.G. provides no support for Adan's argument.

The State presented sufficient evidence to support Adan's misdemeanor harassment conviction. M. testified that Adan threatened to kill her and that she believed he would carry out his threat. This testimony provided the only evidence of Adan's threat. We defer to the jury decisions about M.'s and Adan's credibility and do not review the jury's credibility decision on appeal.[43] A rational juror, having heard that Adan threatened to kill M., could then find that M. did not reasonably fear Adan would kill her but that, instead, he would injure her.

---

[43] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); State v. Casbeer, 48 Wn. App. 539, 542, 740 P.2d 335 (1987).

The State provided evidence of Adan causing M. physical harm and acting in a physically threatening manner. M. testified that Adan once sexually assaulted her after acting similarly erratically. She also testified that on the night of the charged incident, Adan grabbed and shoved her and she felt scared of him. Then, after threatening to kill her, Adan punched her in the face and hit her head against the car window. Finally, the 911 caller witnessed Adan holding M. by her shoulders and "screaming" at her, even after her teeth were dislodged. Considering all the evidence in the light most favorable to the State, a rational juror could find that M. reasonably feared that Adan was threatening to cause her bodily injury and that he would carry out the threat. We affirm the trial court.

## Conclusion

The trial court did not abuse its discretion by admitting the ER 404(b) evidence of the prior sexual assault relevant to and probative of an essential element of the charged crime, which outweighed its prejudicial effect. And a rational trier of fact could have found Adan guilty of misdemeanor harassment

beyond a reasonable doubt because Adan's threats to kill M. caused her to reasonably fear he would act on his threat by inflicting bodily injury. We affirm.

_____ Leach, J.

WE CONCUR:

_____ Spearman, J.

_____ Cox, J.