FILED
COURT OF APPEALS
DIVISION II

2015 MAR 10 AM 8: 38

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45501-3-II |
| Respondent, | |
| v. | |
| EDWARD JAMES STEINER, | UNPUBLISHED OPINION |
| Appellant. | |
| In the Matter of the Personal Restraint Petition of: | Consolidated with Nos. 45552-8-II and 45693-1-II |
| EDWARD JAMES STEINER, | |
| Petitioner. | |

WORSWICK, J. — A jury returned verdicts finding Edward Steiner guilty of felony harassment (threats to kill) and second degree malicious mischief. The jury also returned a special verdict finding that Steiner committed his crime of felony harassment against a law enforcement officer while the officer was performing official duties. Steiner appeals his felony harassment conviction, asserting that (1) sufficient evidence did not support the jury finding the essential element that the harassment victim reasonably feared that Steiner would carry out his threat to kill him, and (2) the trial court abused its discretion by admitting evidence of Steiner's previous assaultive behavior. Steiner also raises several claims of error in two personal restraint petitions that we have consolidated with his direct appeal, but Steiner does not identify any competent evidence in support of those claims. We affirm Steiner's felony harassment conviction and deny his petitions.

No. 45501-3-II
Consol. Wi Nos. 45552-8-II; 45693-1-II

FACTS

On July 5, 2013, United States Postal Service Supervisor Donald Sargent was working at the Port Angeles, Washington post office when he received complaints that Steiner was bothering customers in the drive-through service area outside the post office building. Steiner walked away after Sargent asked him to leave the area. About 20 to 30 minutes later, Sargent received complaints that Steiner was back outside the post office building and was again bothering customers. When Sargent again asked Steiner to leave, Steiner asked if he could go inside to see if he received any mail. Sargent agreed, escorted Steiner in the building, and checked if Steiner had received any mail. Sargent told Steiner that he did not receive any mail, and Steiner started to exit the building. As he was exiting, Steiner kicked and hit a door, which caused the glass window on the door to break. Steiner then hit a second door with his fist, which again caused the glass window on the door to shatter. Sargent called the police.

Port Angeles Police Officer Andrew Heuett responded to the call. Heuett had twice contacted Steiner earlier that same day based on reports that Steiner was drinking in public and was yelling at people. Heuett called for medics when he saw that Steiner's right wrist was bleeding. While waiting for medics to arrive, Heuett handcuffed Steiner's left arm and held Steiner's right arm. After Steiner began to physically resist his detention, Heuett instructed him to kneel on the ground; Steiner complied. Steiner again resisted his detention, and Heuett, now assisted by two other officers, placed Steiner in a prone position and handcuffed both of his arms

behind his back with two sets of handcuffs that were linked together. After Heuett read Steiner

his *Miranda*[1] rights, Steiner began yelling several profanities at Heuett.

Heuett searched Steiner and found what Heuett believed to be a multi-tool and a box

cutter, which items were later found to be a folded up pair of pliers and a small-bladed can

opener. At some point when the medics were on the scene or shortly after the medics left,

Steiner told Heuett, "I am going to kill you" and "I'm going to [expletive] shank you." Report of

Proceedings (RP) at 88.

Heuett transported Steiner to a hospital to treat his injuries. On the way to the hospital,

Steiner continued threatening Heuett, stating, "I'm going to [expletive] cut your throat," and "I'll

get your rifle and shoot you with it." RP at 91. After a doctor checked Steiner's injuries, Heuett

transported Steiner to the jail. As they were leaving the hospital, Steiner told Heuett, "[Y]ou're

not going to make it to the jail." RP at 92. Heuett began to worry that he did not conduct a

thorough enough search of Steiner for weapons. Heuett also became nervous because Steiner's

threats to kill him were specific in nature. Heuett took Steiner's threats seriously and believed

that Steiner was capable of carrying out his threats based in part on Steiner's "history of

assaultive behavior." RP at 102.

The State charged Steiner with felony harassment and two counts of second degree

malicious mischief.[2] Before trial, the trial court held a hearing to determine the admissibility of

evidence concerning Steiner's previous incidents of assaultive behavior. At the evidentiary

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The trial court dismissed one count of second degree malicious mischief before trial.

No. 45501-3-II
Consol. Wi Nos. 45552-8-II; 45693-1-II

hearing, Heuett testified that he had heard about Steiner's previous threatening and assaultive behavior in conversations with other officers. Steiner further testified at the evidentiary hearing that his knowledge of Steiner's prior assaultive behavior had an effect on his perception of Steiner's threats to kill him, stating:

> [T]here are some people we deal with who act very contentiously (sic), swearing a whole bunch and we found out later that the person is, you know, embarrassed about what happened, they were really intoxicated or they didn't have any sort of prior record. And that's happened several times where someone is normally not a problem at all and had a very bad night. And from what I heard about Mr. Steiner, it indicated to me that this was not the situation at all.
>
> . . . .
>
> [I]t's my perception that someone who has a history of assaultive behavior and making threats is more likely to actually take them out then [sic] someone who throws off a comment that's out of character that they wouldn't normally act on.

RP at 30-31. The trial court ruled that evidence that Heuett had heard about Steiner's prior assaultive behavior was admissible to show only Heuett's reasonable fear that Steiner would carry out his threats to kill, stating:

> I think based on the [*State v. Barragan*, 102 Wn. App. 754, 9 P.3d 942 (2000)] case, the limited dissertation as to—or statements made concerning what Officer Heuett knew about the defendant and how it affected his perception of the statements that were made to him is admissible for the limited purpose of just that.
>
> But I think when I questioned Officer Heuett, specifically he said from other officers he is aware—because this was his first contact with Mr. Steiner, but prior to his contact with Mr. Steiner, he was aware from other officers that he has demonstrated in the past assaultive behavior and made threats to other residents at Maloney Heights. And I think there's no issue as to whether or not that occurred or not, I know for certain that Mr. Steiner has numerous convictions for harassment on his record, and I think I tried one of them with regards to some neighbors there at Maloney Heights. I can't recall specifics, but I do recall that was the case. So I don't think that's an issue as to whether or not that was true or not, so, I am going to let Officer Heuett testify that he was aware from other officers within the law enforcement community that there'd been incidents of assaultive behavior and threats to residents at Maloney Heights.

4

I'm not going to allow in the fact that he was kicked out [of Maloney Heights] because I think that's a[n] issue—whether or not that's true or not I don't know, but there's got to be some basis for that.

But I think the assaultive behavior and threatening to other residents is the issue. Whether he was kicked out of Maloney Heights or not kicked out really doesn't matter.

. . . .

I think that—the other analysis I need to make, [defense counsel], is probative versus prejudicial. I think this is certainly more probative of the issue involved than it is prejudicial to Mr. Steiner. Certainly everything negative is prejudicial to some degree, but I think this has more probative value than prejudicial value.

[State]: So, the Court is making the specific finding that the probative value substantially outweighs the prejudicial effect?

[Trial court]: Yes.

RP at 42-44.

At trial, Sargent and Heuett testified consistently with the facts as stated above. Regarding evidence of Steiner's prior assaultive behavior, Heuett testified at trial as follows:

[State]: Okay. Now at this point, was there any other information you were relying on that made you think it was possible that he would carry through with his threats?

[Defense counsel]: Objection, hearsay.

[Trial court]: I think this is what we talked about earlier and I will overrule the objection.

. . . .

[Heuett]: Um, I've had conversations with other officers in my department speaking about cases in which Mr. Steiner was involved in assaults and also making threats.

[State]: Okay. And what about this information that you received from other officers made you pay attention to these threats?

[Heuett]: . . . [I]t's my perception that someone with a history of assaultive behavior, I think that a pattern like that suggests that there's a lot more danger, a lot more reality when someone's making the threat.

RP at 100-102. The trial court then interrupted questioning to instruct the jury as follows:

"The testimony of Officer Heuett as to the Defendant's past behavior is admissible only with regard to the following element of the crime: Was it

5

No. 45501-3-II
Consol. Wi Nos. 45552-8-II; 45693-1-II

reasonable for Officer Heuett to believe Defendant would carry out his threats to kill Officer Heuett.

This testimony shall be considered by you for no other purpose."

RP at 102.[3] There was no further evidence presented at trial regarding Steiner's alleged prior assaultive conduct. The jury returned verdicts finding Steiner guilty of felony harassment and second degree malicious mischief and returned a special verdict finding that Steiner committed felony harassment "against a law enforcement officer who was performing his or her official duties at the time of the crime," knowing that "the victim was a law enforcement officer." Clerk's Papers (CP) at 35-38. Steiner appeals his felony harassment conviction.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Steiner first contends that the State failed to present sufficient evidence in support of his felony harassment conviction. Specifically, Steiner contends that the State did not present sufficient evidence that his words or conduct placed Heuett in reasonable fear that he would carry out his threat to kill. We disagree.

---

[3] The trial court also provided the jury with a similar written instruction that stated:

Testimony by Officer Heuett as to the defendant's alleged past behavior is admissible only on the following element of the crime of HARASSMENT: Was it reasonable for Officer Hewett [sic] to believe that the defendant would carry out his threats to kill Officer Heuett? His testimony concerning alleged past behavior shall be considered by you for no other purpose.

Clerk's Papers at 50.

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We thus evaluate the sufficiency of evidence in support of a conviction by asking whether, viewing the evidence and all reasonable inferences from that evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are deemed equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). And we defer to the trier of fact on issues of witness credibility and resolving conflicting testimony. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308 (1989).

To convict Steiner for felony harassment as charged here, the State had to prove beyond a reasonable doubt that Steiner (1) without lawful authority (2) knowingly threatened to kill Heuett or any other person, and (3) Steiner's words or conduct placed Heuett in reasonable fear that the threat to kill would be carried out. RCW 9A.46.020(1)(a)(i), (2)(b); *State v. Mills*, 154 Wn.2d 1, 10-12, 109 P.3d 415 (2005). Steiner challenges only the sufficiency of evidence in support of the last element, that his words or conduct placed Heuett in reasonable fear that the threat to kill would be carried out.

Here, the State presented evidence that Steiner made several specific threats to kill Heuett, including telling Heuett, "I am going to kill you;" "I'm going to [expletive] shank you;" "I'm going to [expletive] cut your throat;" "I'll get your rifle and shoot you with it;" and "[Y]ou're not going to make it to the jail." RP at 88, 91-92. Heuett testified that he took Steiner's threats seriously and believed that Steiner was capable of carrying out his threats. Heuett stated that he became concerned about the thoroughness of his search of Steiner for

7

weapons because, during a field search of a suspect, officers search only the primary places of concern such as the suspect's pockets and waistband but do not search other areas in which the suspect may be carrying weapons. Heuett also stated that he took Steiner's threats seriously based on the specific nature of the threats and based on "conversations with other officers in my department speaking about cases in which Mr. Steiner was involved in assaults and also making threats." RP at 98-101.

Although the undisputed evidence showed that Steiner was handcuffed in the back of Heuett's patrol vehicle when threatening to kill Heuett, Port Angeles Police Sergeant Barbara McFall testified that handcuffed suspects have been able to get their arms in front of them by "skim[ming] them over their bottom, put[ting their] legs through and bring[ing] them up in front." RP at 132. And here the evidence showed that Steiner was handcuffed behind his back with two sets of handcuffs that were linked together, thus providing Heuett with a reasonable fear that Steiner could maneuver his arms in a manner that made him capable of carrying out his threats. Moreover, McFall also testified that suspects have attacked officers while the suspects' arms were still handcuffed behind them. Taken together and viewed in a light most favorable to the State, this evidence was sufficient for any reasonable jury to find that Heuett's fear that Steiner would carry out his threat to kill was objectively reasonable under the circumstances.

Steiner argues that *State v. C.G.*, 150 Wn.2d 604, 80 P.3d 594 (2003), supports his claim that the State failed to present sufficient evidence to support the reasonable fear element of his felony harassment conviction. In *C.G.*, the alleged harassment victim testified that the defendant's threat to kill him "caused him concern" and that "based on what he knew about C.G., she might try to harm him or someone else in the future." 150 Wn.2d at 607. Our

No. 45501-3-II
Consol. Wi Nos. 45552-8-II; 45693-1-II

Supreme Court held that the alleged victim's testimony was insufficient to prove felony harassment based on a threat to kill because the statute requires the State to "prove that the victim is placed in reasonable fear that *the threat made is the one that will be carried out.*" *C.G.*, 150 Wn.2d at 610 (emphasis added). Here, unlike in *C.G.*, Heuett testified he was afraid that Steiner would carry out his specific threats to kill, not merely that Steiner would harm him in an unspecified way in the future:

> [State]: Okay. Specifically in this case why were you taking [Steiner's threats] seriously?
> [Heuett]: Uh, the threats of using a shank on me or cutting my throat, those are means available to him. Anyone can purchase pocket knives or blades. Anyone can sharpen an object into being a shank. So this isn't I'm going to hit you with an airplane and I'm going to blow up your house with some complex bomb. This is I'm going to stab you or I'm going to cut your throat. So those ones being means (sic) that I'm sure are available to him I found concerning, also by his demeanor. Also his statements about you're not going to make it to the jail.
> I went through the short list of things in my head that could cause that, um, and there have been—well, um—I was certainly concerned that there was a possibility that he could have a firearm. So I was nervous that, you know, he was going to be able to reach something that I wasn't aware of while we were driving to the jail.
> [State]: Okay. And did you think that he would be capable of carrying this out?
> [Heuett]: Yes.

RP at 99-100. Because Heuett testified he feared that Steiner would carry out the specific threats that Steiner made, *C.G.* is clearly distinguishable from this case and does not support Steiner's claim of insufficient evidence. Accordingly, we hold that sufficient evidence supported Steiner's conviction of felony harassment based on a threat to kill.

## II. ER 404(b)

Next, Steiner contends that the trial court abused its discretion by admitting evidence of his prior assaultive behavior. Again, we disagree.

No. 45501-3-II
Consol. Wi Nos. 45552-8-II; 45693-1-II

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). A trial court abuses its discretion if its decision "is manifestly unreasonable or based upon untenable grounds or reasons." *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under ER 404(b), a defendant's prior misconduct is inadmissible to show the defendant's propensity to commit the charged crime. *State v. Fisher*, 165 Wn.2d 727, 744, 202 P.3d 937 (2009). But ER 404(b) does not prohibit evidence of the defendant's prior misconduct for other purposes, such as demonstrating motive, intent, a common scheme or plan, or lack of mistake or accident. *Fisher*, 165 Wn.2d at 744. ER 404(b) must be read in conjunction with ER 403, which rule "requires the trial court to exercise its discretion in excluding relevant evidence that would be unfairly prejudicial." *Fisher*, 165 Wn.2d at 745.

Before admitting evidence subject to ER 404(b), the trial court must "(1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence." *Fisher*, 165 Wn.2d at 745. Steiner contends that the trial court erred in admitting evidence of his prior assaultive conduct because (1) the State failed to prove by a preponderance that the prior

10

assaultive conduct occurred, (2) the State failed to establish the relevance of the evidence, and (3) the trial court did not weigh the evidence's probative value against its prejudicial effect.[4]

A.      Occurrence of Prior Assaultive Conduct

Steiner first contends that the trial court erred by admitting evidence of his prior assaultive conduct because the State failed to establish by a preponderance of the evidence that such prior assaultive behavior occurred.  We disagree.

First, as the trial court twice noted at the ER 404(b) hearing, there was no issue regarding the occurrence of Steiner's prior assaultive conduct.  Steiner did not dispute the fact of his prior assaultive conduct, instead disputing only the fact of his eviction from Maloney Heights.  And the trial court agreed with Steiner that the State had failed to establish the fact of his eviction by a preponderance of the evidence, ruling that the State was prohibited from presenting evidence of his eviction at trial.  Absent a dispute as to the occurrence of a prior bad act, the trial court need

---

[4] As an initial matter, the State argues that Steiner waived his ER 404(b) claim on appeal by failing to object to the admission of his prior assaultive conduct under that rule at trial.  We disagree.  In general, a party's failure to object to evidence at trial waives a challenge to a claimed evidentiary error on appeal.  ER 103(a)(1); *Powell*, 126 Wn.2d at 256.  But where a trial court makes a final ruling admitting or excluding evidence pursuant to a motion in limine, "the losing party is deemed to have a standing objection . . . '[u]nless the trial court indicates that further objections at trial are required.'"  *Powell*, 126 Wn.2d at 256 (alteration in original) (quoting *State v. Koloske*, 100 Wn.2d 889, 895, 676 P.2d 456 (1984), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988), 113 Wn.2d 520, 782 P.2d 1013 (1989)).  Before trial, defense counsel told the trial court that there was an evidentiary issue regarding the "alleged prior bad acts of Mr. Steiner."  RP at 10.  Even if we were to deem this an insufficient objection to preserve Steiner's ER 404(b) claim on appeal, the trial court ruled in limine that evidence that Heuett had heard about Steiner's prior assaultive conduct was admissible at trial.  Accordingly, under *Powell*, Steiner is deemed to have had a standing objection to the admission of the ER 404(b) evidence and, thus, did not waive his claim of error on appeal.  126 Wn.2d at 256.

11

No. 45501-3-II
Consol. Wi Nos. 45552-8-II; 45693-1-II

not determine whether the prior act occurred by a preponderance of the evidence. *Barragan*, 102

Wn. App. at 760. It thus follows that the State need not prove by a preponderance the

occurrence of undisputed prior acts.

Second, Steiner did not object to the trial court's reliance on his criminal history to

establish the fact of his prior assaultive behavior at the evidentiary hearing below, and he does

not challenge the trial court's reliance on his criminal history in this appeal. Instead, Steiner

argues that the trial court violated CODE OF JUDICIAL CONDUCT CJC 3.3 by relying on personal

information to establish the fact of his prior assaultive conduct.[5] But the trial court appropriately

relied on Steiner's criminal history to establish the occurrence of his prior assaultive conduct by

a preponderance of the evidence, stating:

> [P]rior to his contact with Mr. Steiner, [Heuett] was aware from other officers that
> he has demonstrated in the past assaultive behavior and made threats to other
> residents at Maloney Heights. And I think there's no issue as to whether or not that
> occurred or not, I know for certain that Mr. Steiner has numerous convictions for

---

[5] CJC 3.3 provides:

> **Acting as a Character Witness.** A judge shall not act as a character witness in a
> judicial, administrative, or other adjudicatory proceeding or otherwise vouch for
> the character of a person in a legal proceeding, except when duly summoned.

We fail to see how this rule applies to a trial court judge's remark outside the presence of the
jury that he believed he had previously presided over a case involving the defendant. Moreover,
CJC 2.9(C) provides that judges may "consider . . . any facts that may properly be judicially
noticed." And ER 201(b) states in relevant part, "A judicially noticed fact must be one not
subject to reasonable dispute in that it is . . . capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned." The fact that a trial court
judge had presided over a previous trial involving the defendant is one that may properly be
judicially noticed under ER 201(b) because it is "capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned." Accordingly, had the trial
court here relied on that fact in finding the occurrence of Steiner's prior assaultive conduct by a
preponderance of the evidence, such reliance would be proper.

12

harassment on his record, and I think I tried one of them with regards to some neighbors there at Maloney Heights. I can't recall specifics, but I do recall that was the case. So I don't think that's an issue as to whether or not that was true or not, so, I am going to let Officer Heuett testify that he was aware from other officers within the law enforcement community that there'd been incidents of assaultive behavior and threats to residents at Maloney Heights.

RP at 43. Because Steiner did not dispute the fact of his prior assaultive behavior at the ER 404(b) hearing, and because he does not challenge the trial court's reliance on his criminal history to establish the occurrence of his prior assaultive conduct by a preponderance of the evidence, we reject his contention that the trial court erred by admitting the evidence on this ground.[6]

B.      Relevance of Prior Assaultive Conduct

Next, Steiner contends that the trial court erred by admitting evidence of his prior assaultive conduct because the State failed to establish the relevance of such prior assaultive conduct. This contention lacks merit. The State asserted at the ER 404(b) hearing that Steiner's prior assaultive conduct was relevant "to show the reasonableness of [Heuett's] fear and his apprehension about whether the Defendant would carry out his threat." RP at 40. And it is well established that in a prosecution for felony harassment, a victim's knowledge of the defendant's prior assaultive conduct is relevant to show the victim's reasonable fear that the defendant would

---

[6] Although unclear from his brief, Steiner also appears to take issue with the admission of Heuett's testimony regarding his prior assaultive conduct based on inadmissible hearsay. This claim lacks merit. ER 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Heuett's testimony that he had heard of Steiner's prior assaultive conduct was not hearsay because it was not offered to prove that Steiner had previously engaged in assaultive conduct. Rather, it was offered for the statement's effect on Heuett and to show the reasonableness of Heuett's fear that Steiner would carry out the threat to kill.

13

carry out his or her threat. *See, e.g.*, *Barragan*, 102 Wn. App. at 759 (defendant's statements to victim regarding defendant's earlier successful fights relevant to prove reasonableness of victim's fear that defendant would carry out his threats against victim); *State v. Ragin*, 94 Wn. App. 407, 411-12, 972 P.2d 519 (1999) ("[Victim's] knowledge of [defendant's] prior violent acts was relevant to the reasonable fear element of felony harassment."). Accordingly, we hold the State established the relevance of evidence concerning Steiner's prior assaultive conduct, and the trial court did not err by admitting the evidence on this ground.

C.      ER 403 Balancing Analysis

Finally, Steiner contends that the trial court failed to conduct an ER 403 balancing analysis on the record. But the record belies Steiner's contention. Here the trial court stated on the record:

> I think that—the other analysis I need to make, [defense counsel], is probative versus prejudicial. I think this is certainly more probative of the issue involved than it is prejudicial to Mr. Steiner. Certainly everything negative is prejudicial to some degree, but I think this has more probative value than prejudicial value.

RP at 44. Immediately following this statement, the State asked, "So, the Court is making the specific finding that the probative value substantially outweighs the prejudicial effect?" to which the trial court responded, Yes. RP at 44.

Steiner appears to argue that the trial court's ER 403 balancing analysis was inadequate, but he does not explain what more the trial court was required to do and does not cite any

14

authority supporting his argument that the trial court's analysis was inadequate.[7] The trial court

did not abuse its discretion by admitting evidence of Steiner's prior assaultive conduct.

### III. PERSONAL RESTRAINT PETITION ISSUES

Steiner has filed two separate personal restraint petitions that we have consolidated them

with his direct appeal. In cause number 45552-8-II (Wash. filed Oct. 28, 2013), Steiner appears

to contend that (1) the Port Angeles Police Department has fabricated charges against him, (2)

his speedy trial right was violated because the trial court improperly continued his trial to

accommodate the vacations of witnesses and the prosecutor, (3) his defense counsel was

ineffective for failing to call witnesses on his behalf, (4) Heuett committed perjury during trial,

and (5) his Eighth Amendment rights were violated by the trial court's excessive bail

requirement. In cause number 45693-1-II (Wash. filed Oct. 3, 2013), Steiner appears to repeat

his speedy trial, ineffective assistance of counsel, and perjury claims. We deny Steiner's

petitions.

To obtain relief through a personal restraint petition, Steiner must show either

constitutional error that resulted in actual and substantial prejudice or nonconstitutional error that

resulted in a complete miscarriage of justice. *In re Pers. Restraint of Cook,* 114 Wn.2d 802,

---

[7] Even assuming that the trial court's ER 403 balancing analysis was inadequate, the record here is sufficient to establish that the prejudicial effect of the evidence at issue did not substantially outweigh its probative value. Evidence that Heuett had heard about Steiner's prior assaultive conduct was highly probative of whether Heuett had a reasonable fear that Steiner would carry out his threats to kill. *Barragan,* 102 Wn. App. at 759; *Ragin,* 94 Wn. App. at 411-12. And the evidence had little prejudicial effect; Heuett's testimony about Steiner's alleged prior assaultive behavior was brief and did not describe the nature of Steiner's alleged prior assaults, stating only that he had heard about the prior assaultive behavior from other officers. Additionally, the trial court instructed the jury not to consider the evidence for any purpose other than to evaluate the reasonableness of Heuett's fear that Steiner would carry out his threat.

No. 45501-3-II
Consol. Wi Nos. 45552-8-II; 45693-1-II

810-13, 792 P.2d 506 (1990). Additionally, Steiner must support his claims of error with a statement of facts on which his claim of unlawful restraint is based and the evidence available to support his factual allegations; he cannot rely solely on conclusory allegations. RAP 16.7(a)(2); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988); *see also Cook*, 114 Wn.2d at 813-14. Steiner fails to identify any evidence in support of the conclusory allegations contained in his petitions.[8] Accordingly, we deny Steiner's petitions and affirm his felony harassment conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Bjorgen, A.C.J.

Sutton, J.

---

[8] For example, Steiner does not identify any competent evidence to show that (1) the Port Angeles Police Department fabricated charges against him, (2) the trial court granted a continuance over his objection that resulted in a violation of his timely trial right, (3) he had requested defense counsel to call witnesses on his behalf and that such witnesses would have presented evidence favorable to his defense, (4) Heuett had committed perjury, or (5) the trial court had imposed bail in an amount offending the Eighth Amendment right to be free from an excessive bail requirement.