**FILED**
**FEBRUARY 8, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33962-9-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 35012-6-III) |
| | ) | |
| v. | ) | |
| | ) | |
| KEITH WILLIAM BEIERS, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| KEITH WILLIAM BEIERS, | ) | |
| | ) | |
| Petitioner. | ) | |

PENNELL, J. — A jury convicted Keith Beiers of two counts of felony assault, each with a firearm enhancement. Mr. Beiers appeals his convictions. He has also filed a timely personal restraint petition (PRP). We affirm the convictions and dismiss the PRP.

FACTS

*Background*

Over a two-year period, Keith Beiers was involved in an escalating dispute with his neighbors. Things started with arguments over snow removal and firewood disposal, but eventually tensions escalated and the neighborhood became polarized. Mr. Beiers wound up routinely surveilling the area with binoculars and recording car license plates. Of particular concern to Mr. Beiers was a neighbor by the name of Bret Easley. Mr. Beiers knew Mr. Easley had some criminal convictions and was serving a term of probation. Mr. Beiers believed Mr. Easley was involved in some sort of illegal activity. Mr. Beiers became so concerned that he began carrying a gun in his car for protection.

Mr. Beiers often called the police to report his neighbors' suspected illegal activities. His complaints were received by Spokane Police Officer Sandra McIntyre. Officer McIntyre described the dispute between Mr. Beiers and his neighbors as "a tit-for-tat thing" that was "really juvenile." 2 Verbatim Report of Proceedings (VRP) (Nov. 19, 2015) at 425-26. She said multiple individuals in the neighborhood were responsible for the neighborhood conflict, not just Mr. Beiers. Officer McIntyre never found any evidence to substantiate allegations made by Mr. Beiers against his neighbors. Officer McIntyre did admit she would have been afraid of Mr. Beiers if she were a resident of the neighborhood.

2

*The offense conduct*

The dispute between Mr. Beiers and his neighbors came to a head one night in November 2012. Mr. Beiers and his neighbors gave contrasting accounts of what happened. The neighbors claimed Mr. Beiers engaged in an unsolicited attack. Mr. Beiers testified he was the one who had been attacked and that he was only acting in self-defense.

The trouble began when a neighbor named Callie O'Connor saw Mr. Beiers sitting in his car outside of her home. Mrs. O'Connor told her husband, Nick, what she saw. Mr. O'Connor then went outside to confront Mr. Beiers. Bret Easley heard some commotion and went outside as well. According to Mr. Beiers, he had simply stopped in front of the O'Connor house to clean his gun. Given his suspicions of Mr. Easley, Mr. Beiers explained it was his custom to have his weapon loaded and ready before nearing Mr. Easley's home. The others at the scene denied Mr. Beiers was cleaning his gun. It was their belief that he had been masturbating.

After confronting Mr. Beiers, Mr. O'Connor called the police. As this was happening, Mr. Beiers began to drive slowly past the O'Connor home. According to Mr. Beiers, he drove away because he saw Mr. Easley running toward him, armed with a handgun. Mr. Easley denied having a weapon. No one else reported seeing Mr. Easley with a gun or other weapon.

3

At some point, Mr. O'Connor stepped out into the street to record Mr. Beiers's license plate number. Mr. Beiers's car then struck Mr. O'Connor. According to Mr. Beiers, Mr. O'Connor ran at his vehicle and threw himself on the hood. Other witnesses testified Mr. O'Connor only ended up on the hood as a result of being struck. Everyone agreed Mr. Beiers's car was moving very slowly when it hit Mr. O'Connor.

After the collision, Mr. Beiers got out of his car and a physical altercation ensued between Mr. Beiers and Mr. O'Connor. According to Mr. O'Connor, he was trying to keep Mr. Beiers subdued until police arrived. Mr. Beiers claimed Mr. O'Connor was trying to kill him. At some point during the altercation, Mr. Beiers reached into his car and retrieved his loaded firearm. Mr. Beiers fired a shot. Mr. Beiers testified it was a harmless warning shot. Mr. O'Connor testified the gun had been pointed at his head.

After the gun shot, the O'Connors ran away in different directions. Mr. Easley testified that as Mr. Beiers passed him, Mr. Beiers pointed his gun in Mr. Easley's direction. Mr. Easley then ran away. Mrs. O'Connor and other witnesses testified Mrs. O'Connor ran into a neighbor's yard where she slipped and fell to the ground. Mr. Beiers followed, pointed his gun at Mrs. O'Connor's head and stated, "I'm going to kill you all. Just leave me alone. I want to kill you all. I hate you all. I'm going to kill you all." 2 VRP (Nov. 18, 2015) at 250-51. According to Mrs. O'Connor, she begged for her life

4

while Mr. Beiers responded with more vitriol.  Mrs. O'Connor claimed Mr. Beiers only lowered his weapon after the police arrived at the scene.

Mr. Beiers provided a completely different account of what happened after the gun shot.  He testified he returned home in a dazed state and was only contacted by the police when he went to retrieve his vehicle.  Mr. Beiers denied ever pointing his gun at either of the O'Connors or chasing them.  He also denied pointing a gun at Mr. Easley.

After law enforcement arrived, Mr. Beiers complied with orders to drop his gun. He was then held on the ground at gunpoint until law enforcement determined he could be moved safely.  Mr. Beiers was then detained in handcuffs and ultimately placed in the back seat of a patrol car.  During his detention, Mr. Beiers told one of the officers his name and, in response to questions about some injuries to his head, stated something to the effect of, "I got the shit kicked out of me.  I was in fear for my life."  1 VRP (Nov. 16, 2015) at 23.  *Miranda*[1] warnings were administered and an officer asked Mr. Beiers if he would answer any more questions.  Mr. Beiers responded, "No.  I didn't do anything wrong.  I was defending myself."  *Id*. at 28.  Mr. Beiers then invoked his right to silence and all questioning ceased.  Additional officers on the scene spoke with other witnesses and neighbors.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*Legal proceedings*

Mr. Beiers was charged with one count of first degree assault against

Mr. O'Connor, and two counts of second degree assault, one for Mrs. O'Connor and one

for Mr. Easley. Each count included a firearm enhancement.

Prior to trial, Mr. Beiers filed a motion under CrR 3.5 regarding the admissibility

of statements made to law enforcement on the night of his arrest. After presenting

testimony from the officer who had questioned Mr. Beiers at the scene, the prosecutor

commented that most of Mr. Beiers's statements were "self-serving" and that the State

was unsure as to whether the statements would be elicited at trial. 1 VRP (Nov. 16, 2015)

at 31. Despite having filed a CrR 3.5 motion, defense counsel argued the statements

should come in and that if the State did not present the statements in its case-in-chief, the

defense would elicit them on cross-examination. The trial court ruled Mr. Beiers's

substantive statements were admissible under *Miranda*. Accordingly, the State would be

permitted to present Mr. Beiers's statements in its case-in-chief if it chose to do so.

However, the court instructed the prosecutor not to present evidence about Mr. Beiers

exercising his right to silence.

At trial, the prosecutor took time to point out that each of the percipient witnesses

to the charges against Mr. Beiers had given statements to the police on the night of the

incident. The defense challenged the witnesses based on their prior statements by

pointing out inconsistencies between the prior statements and trial testimony. Of particular focus were inconsistencies in the testimony of Mr. O'Connor. For example, in his statement to police, Mr. O'Connor had said Mr. Beiers pointed the gun at his chest. But at trial, Mr. O'Connor testified the gun was pointed at his head. In addition, Mr. O'Connor testified he saw Mr. Beiers holding a gun inches away from his wife's head. This detail was never related to police on the scene.

In addition to pointing out the on-the-scene statements by various witnesses, the prosecutor also opted to present the fact that Mr. Beiers made statements the night of the incident. The prosecutor elicited the fact that Mr. Beiers's statements to police were quite limited.[2] The prosecutor asked if the officer who spoke to Mr. Beiers felt he had adequate time to talk to Mr. Beiers the night of Mr. Beiers's arrest. The officer responded, "[n]ot necessarily," because he was involved in several other tasks to secure the scene. When the officer volunteered that he eventually "did try to talk to Mr. Beiers, but—" the prosecutor interjected with, "Okay. But you got a statement from him; I mean, he did tell you that he had been injured by somebody else and that he felt that he was the nonaggressor; correct?" The officer answered, "That is correct." 1 VRP (Nov. 17, 2015) at 124.

---

[2] The prosecutor did not elicit the fact that Mr. Beiers said no, when asked if would answer more questions.

The prosecutor concluded her questions regarding Mr. Beiers's statements by pointing out how Mr. Beiers's statements related to his formal arrest. According to the testimony, Mr. Beiers was not formally arrested immediately after making his statements to police. Instead, the officer who had talked to Mr. Beiers consulted with other officers on the scene about what had been learned from the investigation, including contact with witnesses and victims. It was only after this consultation that law enforcement concluded there was probable cause to arrest Mr. Beiers.

The defense did not object to the prosecutor's handling of Mr. Beiers's prior statements. Instead, defense counsel emphasized Mr. Beiers's statements, pointing out Mr. Beiers had told police he "was in fear for his life." 1 VRP (Nov. 17, 2015) at 136. The defense also elicited testimony that Mr. Beiers's last statement to police was "I didn't do anything wrong. I was defending myself." *Id*. at 138.

Mr. Beiers testified during the defense case-in-chief. The prosecutor began her cross-examination by asking Mr. Beiers if he had told police the same detailed story that he had relayed to the jury. Mr. Beiers said he had not. The prosecutor then explored this issue by asking as follows:

> Q. So rather than tell the police just how dangerous that had been and how close [you] came [to] losing your life, you let them arrest you; correct?
> A. That's correct.

3 VRP (Nov. 19, 2015) at 501. At the close of the prosecutor's examination, she

again broached the topic of what Mr. Beiers did not tell the police:

> Q. And rather than telling the police this terrifying story, you allowed them
> to arrest you?
> A. Yes, ma'am.

*Id*. at 512.

Defense counsel did not object to the prosecutor's questions on cross-examination.

Instead, on redirect examination, defense counsel also raised the issue of what Mr. Beiers

had told police at the time of his arrest. Through questioning by defense counsel, Mr.

Beiers emphasized he had told the police he was acting in self-defense and that he was

scared for his life because he had "just got the shit beat of [him]." *Id*.

The focus of the parties' summation was witness credibility. The prosecutor

argued Mr. Beiers was not believable given his prior unproven suspicions against his

neighbors, the implausible nature of his story, and the lack of detail he provided to police

on the night of his arrest. Drawing from her cross-examination of Mr. Beiers, the

prosecutor claimed Mr. Beiers "allowed himself to be arrested rather than tell the police"

about his hair-raising version of the events. 3 VRP (Nov. 19, 2015) at 536.

During his closing argument, defense counsel claimed it was the State's witnesses

who were not credible. Counsel placed great emphasis on differences between the in-

court testimony of the State's witnesses and prior statements made to police and 911 dispatch. Defense counsel urged the jurors to "look at the inconsistencies, look at your notes, talk about the differences. They are super and extremely important in this very serious case." *Id.* at 561.

The prosecutor brought up the issue of inconsistencies in her rebuttal statement. She noted:

> [P]eople who experience a very dramatic event, they don't tell you everything. So look at that in light of the defendant who told you about what he thought was [an event equally traumatic as that described by the victims] who didn't tell the police anything. He got arrested and went to jail rather than telling them what he told you in the courtroom today.

*Id.* at 563.

Prior to retiring for deliberations, the jury was given a self-defense instruction for the first degree assault charge against Mr. O'Connor, but not for the second degree assault charges against Mrs. O'Connor and Mr. Easley. The jury found Mr. Beiers guilty of first degree assault against Mr. O'Connor and second degree assault against Mrs. O'Connor. The jury also found the crimes were committed with a firearm. The jury acquitted Mr. Beiers of the second degree assault charge against Mr. Easley. Mr. Beiers was sentenced to 207 months' confinement. He appeals, and a PRP has been consolidated with his appeal.

ANALYSIS

*Alleged comment on the right to silence*

Mr. Beiers argues the prosecutor violated his Fifth Amendment[3] right against self-incrimination by improperly commenting on his right to silence. Mr. Beiers points out his statements to police were limited because he exercised his right to silence. By emphasizing at trial the limited nature of Mr. Beiers's statements to police, Mr. Beiers claims the prosecutor improperly emphasized Mr. Beiers's postarrest silence and suggested Mr. Beiers's failure to submit to a detailed interview was evidence of guilt.

The defense raised no objection at trial to the prosecutor's handling of Mr. Beiers's on-the-scene statements. Accordingly, our review turns on whether Mr. Beiers can establish manifest constitutional error, as contemplated by RAP 2.5.

To meet the threshold standard for review of an unpreserved issue under RAP 2.5(a)(3), "[a]n appellant must demonstrate (1) the error is manifest and (2) the error is truly of constitutional dimension." *See State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). A "manifest" error is one that is "obvious." *Id*. at 99-100. It is an error that would have been apparent to the trial court, such that the trial court could have corrected the error even in the absence of an objection. *Id*. at 100. An error is not "manifest" in

---

[3] U.S. CONST., AMEND. V.

11

circumstances where a "prosecutor or trial counsel could have been justified in their actions or failure to object." *Id*.

The manifest error requirement is of particular importance in the context of a prosecutor's alleged comment on the right to silence. A subtle remark that merely *could* be interpreted as penalizing the defendant for exercising his or her right to silence is not the type of error that can be raised for the first time on appeal. *State v. Burke*, 163 Wn.2d 204, 216, 181 P.3d 1 (2008). Instead, the violation must be more blatant. The record must make it apparent that the prosecutor "'manifestly intended [her] remarks to be a comment on'" the defendant's exercise of the right to silence. *Id*. (quoting *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)).

The record here lacks any blatant reference to Mr. Beiers's silence. Neither the prosecutor nor any law enforcement witness ever explicitly said Mr. Beiers had chosen to remain silent. The prosecutor merely pointed out that Mr. Beiers's initial statements lacked detail. This lack of detail was relevant to the credibility of Mr. Beiers's trial testimony, which was much more detailed. It was also relevant to helping the jury compare Mr. Beiers's testimony to that of other witnesses, all of whom had given more complete prior statements and were impeached with inconsistencies in those prior statements at trial.

Despite the lack of any explicit testimony, Mr. Beiers argues the prosecutor

crossed the line into improper comments on silence when the prosecutor claimed

Mr. Beiers allowed himself to be arrested instead of providing the police more detail.

Mr. Beiers's claim is too subtle to meet the requirements of manifest error review.  The

evidence was that Mr. Beiers voluntarily made statements to the police, protesting his

innocence.  The problem for Mr. Beiers was not that he remained silent instead of talking,

it was his statements lacked depth when he did choose to speak, especially compared to

other witnesses.  The State suggested this distinction resulted in Mr. Beiers's arrest,

instead of others such as Mr. O'Connor or Mr. Easley.  It was not manifestly improper for

the prosecutor to impugn Mr. Beiers's credibility by referencing omissions from his initial

statements to police.  *See State v. Clark*, 143 Wn.2d 731, 765, 24 P.3d 1006 (2001)

("When a defendant does not remain silent and instead talks to police, the state may

comment on what he does *not* say.").

Had Mr. Beiers thought the prosecutor's analysis improperly allowed the jury to

connect the brevity of Mr. Beiers's statements with his exercise of the right to silence, an

objection should have been raised during trial.  The trial court then could have taken

corrective action.  But that is not what happened.  Defense counsel's failure to object was

likely the result of a strategic decision to emphasize the exculpatory significance of Mr.

Beiers's on-the-scene statements.  An objection to the jury may have suggested the

defense was hiding something or that the defense lacked confidence in Mr. Beiers's prior

13

statements. While counsel's choice was reasonable,[4] it was ultimately unsuccessful.

Misgivings Mr. Beiers may now have about counsel's choice are not grounds for reversal.

*Lack of self-defense instruction on count II*

Mr. Beiers argues the lack of a self-defense instruction for the second degree

assault charge as to Mrs. O'Connor violated his due process rights, and defense counsel

was ineffective for failing to object to the lack of such an instruction. Having reviewed

the record de novo, we disagree.

A defendant is only entitled to a self-defense instruction when the record provides

evidentiary support for so doing. *State v. Thysell*, 194 Wn. App. 422, 426, 374 P.3d 1214

(2016). The charge regarding Mrs. O'Connor failed to reach this requirement. Mr.

Beiers never claimed he threatened Mrs. O'Connor in self-defense. Instead, his defense

was that the assault against Mrs. O'Connor never happened. A self-defense instruction is

not warranted under these circumstances. *See State v. Aleshire*, 89 Wn.2d 67, 71, 568

P.2d 799 (1977) ("One cannot deny that he struck someone and then claim that he struck

them in self-defense."); *accord State v. Barragan*, 102 Wn. App. 754, 762, 9 P.3d 942

(2000).

---

[4] Because defense counsel's decision to permit the prosecutor's line of reasoning was reasonably strategic, Mr. Beiers's claim that counsel was ineffective for failing to lodge an objection fails. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

*Ineffective assistance of counsel based on conflict of interest*

As part of his PRP, Mr. Beiers argues he was denied effective assistance of counsel as a result of trial counsel's divided loyalties between Mr. Beiers and trial witness Officer Sandra McIntyre. We review this claim de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

To show a constitutional violation of the right to conflict-free counsel, "a defendant must show that (a) defense counsel 'actively represented conflicting interests' and (b) the 'actual conflict of interest adversely affected' his performance." *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 348-49, 325 P.3d 142 (2014) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)). "An actual conflict of interest exists when a defense attorney owes duties to a party whose interests are adverse to those of the defendant." *State v. White*, 80 Wn. App. 406, 411-12, 907 P.2d 310 (1995); *accord State v. Byrd*, 30 Wn. App. 794, 798, 638 P.2d 601 (1981); *see also* RPC 1.7. [5] A "[p]ossible or theoretical" conflict of interest is "'insufficient to impugn a criminal conviction.'" *Gomez*, 180 Wn.2d at 349 (quoting *Cuyler*, 446 U.S. at 350).

---

[5] The Rules of Professional Conduct do not fully embody the constitutional standard. *Gomez*, 180 Wn.2d at 349.

Mr. Beiers has failed to show he and Officer McIntyre had the type of competing interests that can give rise to a constitutional claim of ineffective assistance. Officer McIntyre and Mr. Beiers did not have any obviously competing interests. Officer McIntyre was not a witness to the immediate events leading up to Mr. Beiers's arrest. Defense counsel's representation of Officer McIntyre had nothing to do with Mr. Beiers or with Officer McIntyre's work in Mr. Beiers's neighborhood. Mr. Beiers claims defense counsel's representation of Officer McIntyre hampered counsel's ability to impeach Officer McIntyre at trial. Apart from the fact that Officer McIntyre was a defense witness, and thus not subject to defense cross-examination, Mr. Beiers fails to point out how Officer McIntyre would have been impeached had defense counsel not labored under a conflict. Mr. Beiers claims Officer McIntyre's trial testimony was less "forthcoming" than the information provided to Mr. Beiers's attorney during a pretrial interview. PRP Ex. D at 2. But this vague statement provides no indication of the nature or extent of any changes in Officer McIntyre's testimony that might permit an analysis of prejudice. Mr. Beiers's allegation regarding Officer McIntyre amounts to nothing more than a theoretical claim of conflict. It is insufficient to justify relief from conviction.

*Remaining ineffective assistance claims*

Mr. Beiers makes several additional claims that his counsel provided ineffective assistance. We review each claim under the two-part test that requires a showing of

16

deficient performance and prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

### *Lack of opening statement*

Mr. Beiers argues defense counsel was ineffective for not providing an opening statement. We disagree. Choices about how to handle an opening statement are tactical. Accordingly, "[a] defense counsel's decision to waive an opening statement does not constitute deficient performance." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 715, 101 P.3d 1 (2004).

### *Alleged failure to interview witnesses*

Mr. Beiers next argues his trial counsel failed to interview key witnesses. This argument fails for lack of factual support, as required by RAP 16.7(a)(2). The only evidence regarding lack of interviews is a declaration from appellate counsel, indicating trial counsel's file does not contain interview reports or notes. PRP Ex. C at 2-3. This is insufficient. Competent evidence would consist of a statement from a pertinent individual such as Mr. Beiers's trial counsel or an involved witness, declaring no interviews took place. The potential to develop such evidence was readily available to Mr. Beiers. Trial counsel has apparently been cooperative with Mr. Beiers during the PRP process. Trial counsel has submitted a declaration, outlining his work on the case.

17

He also participated in an interview with appellate counsel. Yet nowhere in the record does trial counsel explain the significance of his lack of interview notes or whether he failed to perform witness interviews. Mr. Beiers's speculation as to why trial counsel's file failed to include evidence of witness interviews is insufficient to establish no interviews took place.

Mr. Beiers also fails to show how he was prejudiced by any lack of defense interviews. Defense counsel thoroughly cross-examined all of the State's witnesses and had a clear theory and argument to present to the jury. Mr. Beiers's vague claim that defense counsel would have been better able to cross-examine witnesses after prior interviews is insufficient to meet the burden of showing prejudice.

*Failure to introduce outdoors surveillance video*

Mr. Beiers argues defense counsel should have shown a surveillance video to the jury. This claim fails based on lack of prejudice. The surveillance video purportedly could have been used to impeach Mr. Easley's testimony. But the jury acquitted Mr. Beiers of the charge regarding Mr. Easley. It is therefore not clear how the video could have been of further assistance. When it came to the charges resulting in conviction, Mr. Easley's testimony was cumulative at best. Mr. Beiers fails to meet his burden of demonstrating how additional impeachment of Mr. Easley could have changed the outcome of his case.

18

*Failure to introduce Mr. Easley's criminal history*

Mr. Beiers similarly argues defense counsel should have introduced more details on Mr. Easley's criminal history. Again, this argument fails in light of the jury's acquittal regarding Mr. Easley.

*Failure to introduce Mr. Beiers's e-mails with Officer McIntyre*

Mr. Beiers next argues defense counsel should have introduced into evidence his e-mails, letters, and reports to Officer McIntyre about his neighbors' activities. We find defense counsel's decision not to introduce these materials reasonably tactical. Not only were the various e-mails and reports lengthy, they reflect poorly on Mr. Beiers's demeanor and mental state. Given Officer McIntyre's confirmation that Mr. Beiers had submitted numerous complaints and that Mr. Beiers was not the only source of problems in the neighborhood, defense counsel could reasonably conclude that introducing the e-mails and other documents would result in more harm to Mr. Beiers's case than good.

*Stating Mr. Beiers would not testify*

Finally, Mr. Beiers argues defense counsel was ineffective for misstating during voir dire that Mr. Beiers would not testify. We find no prejudice. To the contrary, the fact defense counsel spent time admonishing the jury that Mr. Beiers had no obligation to testify may have enhanced Mr. Beiers's credibility and the value of his testimony to the jury. Reversal is unwarranted.

19

*Cumulative error*

Mr. Beiers claims the cumulative effect of defense counsel's multiple instances of ineffective assistance requires a new trial. As there was no ineffective assistance, this argument fails.

## CONCLUSION

We affirm the judgment and sentence of the trial court and dismiss the PRP.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____   _____
Lawrence-Berrey, A.C.J.      Korsmo, J.